**UNITED STATES of America,**
**Plaintiff,**

v.

**Calvin Ross JOHNSON, Jr., Defendant.**

**Crim. No. 14419.**

United States District Court
M. D. Pennsylvania.

June 30, 1969.

Carlon O'Malley, Jr., Asst. U. S. Atty., Scranton, Pa., for plaintiff.

Robert L. Pfannebecker, Lancaster, Pa., for defendant.

## MEMORANDUM

NEALON, District Judge.

Calvin Ross Johnson, Jr., stands charged with a violation of 50 U.S.C. App. § 462 for willfully and knowingly failing and neglecting to submit to induction into the Armed Forces of the

United States on August 1, 1967. Defendant waived trial by jury and the case proceeded before this Court on April 7, 1969.

A motion having been filed by defendant to find the facts specially, pursuant to Rule 23(c), Fed.R.Crim.P., I make the following

### FINDINGS OF FACT

1. Calvin Ross Johnson, Jr., was born on August 23, 1944, and registered with Local Selective Service Board 85, Lancaster, Pennsylvania, on September 6, 1962, soon after his eighteenth birthday.

2. On April 16, 1964, defendant was mailed a Classification Questionnaire (SSS Form 100), which was completed and returned by the registrant.

3. On SSS Form 100, defendant stated that he was unmarried; that his occupation was that of a student at Howard University where he was majoring in Sociology and was a member of the ROTC program.

4. On SSS Form 100, defendant did not claim exemption as a conscientious objector.

5. On May 11, 1964, Local Board 85 classified defendant 1-A and mailed defendant a Notice of Classification (SSS Form 110).

6. No personal appearance or appeal from this classification was requested by defendant within the required time period.

7. On September 2, 1964, Local Board 85 mailed defendant a Current Information Questionnaire (SSS Form 127), which was returned September 4, 1964.

8. On SSS Form 127, defendant once again stated that he was unmarried and that he had completed one year at Howard University where he was majoring in Sociology and where he was a member of the ROTC program.

9. On October 9, 1964, Local Board 85 received notice from Howard University that defendant was a part-time student.

10. On January 18, 1965, Local Board 85 mailed defendant on Order to Report for an Armed Forces Physical Examination on February 2, 1965, at 6:15 A.M.

11. On February 2, 1965, defendant failed to report for his physical examination.

12. On February 2, 1965, Local Board 85 received a letter from defendant dated February 1, 1965. In this letter defendant stated that he was a Sophomore at Howard University, where he was a member of the ROTC program, that his 1-A classification should be changed, and that he was enclosing a prior semester's registration card and an ROTC card.

13. On February 2, 1965, by letter for the Local Board, Mrs. Thelma Burie, Clerk of the Local Board, explained to defendant the requirements of the possible classifications to which he might be entitled and advised defendant to take the Board's January 18, 1965, Order to Report for a Physical Examination to the proper Washington, D. C., Local Board, where arrangements would be made for transfer of the physical examination.

14. On February 15, 1965, Local Board 85 mailed to defendant a Delinquency Notice (SSS Form 304) for failing to report for his physical examination.

15. On February 15, 1965, Local Board 85 received official notice from the ROTC at Howard University that defendant was selected for enrollment in the Senior Division of the ROTC and had executed a deferment agreement.

16. On February 23, 1965, Local Board 85 received a Student Certificate from the Registrar of Howard University stating that defendant was satisfactorily pursuing a full-time course of instruction at that University.

17. On February 26, 1965, by letter for the Local Board, Mrs. Thelma Burie,

Clerk of the Board, again advised defendant to request a transfer of the ordered physical examination by reporting to the Local Board in Washington, D. C.

18. On March 4, 1965, defendant completed a request to transfer his physical examination to the jurisdiction of Local Board 3, Washington, D. C.

19. On April 22, 1965, defendant submitted to an Armed Forces physical examination at the Armed Forces Examining Station, Baltimore, Maryland.

20. On April 26, 1965, defendant notified Local Board 85 by letter that he had passed his Armed Forces physical examination and inquired about his classification as a student (2–S).

21. On April 29, 1965, by letter for the Local Board, Carole J. Wagner, Assistant Clerk, informed defendant of the reasons why he was currently classified 1–A and advised him that the Board would mail him another classification card after the Board received and reviewed the results of defendant's Armed Forces physical examination.

22. On May 10, the Local Board was notified by the Armed Forces Examining Station, Baltimore, Maryland, that defendant was found fully acceptable for induction.

23. On May 10, 1965, defendant was mailed notification of the results by means of Form DD 62.

24. On May 17, 1965, Local Board 85 removed defendant from delinquency status imposed on February 15, 1965.

25. On May 17, 1965, Local Board 85 reclassified defendant from 1–A status to 1–D status and mailed to defendant Notice of this Classification (SSS Form 110). The classification 1–D covers those registrants who are members of reserve components or students taking military training. 32 C.F.R. § 1622.13.

26. On February 2, 1966, defendant personally visited Local Board 85 and informed the Clerk that he was no longer attending college and that he had begun work on December 1, 1965. At this time, defendant requested a conscientious objector form (SSS Form 150).

27. On February 28, 1966, defendant informed Local Board 85 of his acceptance as a member of the Volunteers In Service To America (VISTA), effective March 22, 1966. This letter of notification was received on March 1, 1966.

28. On March 9, 1966, Local Board 85 received notice from VISTA Headquarters in Washington, D. C., that defendant had been selected as a VISTA volunteer for a period of one year.

29. On March 14, 1966, Local Board 85 reclassified defendant 1–A and mailed defendant a Notice of Classification (SSS Form 110).

30. On March 21, 1966, defendant wrote to Local Board 85 appealing his 1–A classification and further explained his status with VISTA. This letter was received by Local Board 85 on March 24, 1966.

31. On March 28, 1966, Local Board 85 received a telegram from VISTA Headquarters in Washington, D. C., requesting consideration of defendant's service in the War on Poverty as a VISTA volunteer.

32. On March 28, 1966, Local Board 85 requested review of the file and appropriate advice thereon from the Pennsylvania Headquarters of the Selective Service System.

33. On March 30, 1966, the State Director of Selective Service recommended classification of defendant as 2–A. The classification 2–A covers those registrants who are deferred because of civilian occupation (except agriculture and activity in study). 32 C. F.R. § 1622.22.

34. On April 18, 1966, Local Board 85 reclassified defendant 2–A until April 19, 1967, and mailed defendant a Notice of Classification (SSS Form 110) and mailed to the Office of Economic Opportunity a Notice of Classification Action (SSS Form 111).

35. On May 16, 1966, VISTA Headquarters acknowledged receipt of SSS Form 111 and informed the Local Board that defendant was assigned to the Mo-

588

bilization for Youth Project in New York, New York.

36. On February 3, 1967, Local Board 85 received a copy of a letter sent to "various officials" from Marie S. Beeman (Mrs. Martin S. Beeman), Northport, Long Island, New York, notifying the Board that defendant, a negro, and Edna A. Beeman, a caucasian and the writer's daughter, intended to be married and setting forth the reasons for her opposition to the marriage.

37. Pursuant to the receipt of this letter, on February 6, 1967, the defendant's file was forwarded to the State Director of Selective Service for the reason, as stated by the Clerk of the Local Board, Mrs. Thelma Burie: "Anything that we do not understand we forward to the State Director."

38. On February 8, 1967, the State Director of the Selective Service System acknowledged receipt of the letter of Mrs. Marie S. Beeman and advised her that defendant was properly classified and that the Selective Service System had absolutely no control over registrant's activities.

39. On February 13, 1967, Local Board 85 received a letter from Mr. Arthur M. Bennett, Past Commander, Veterans of Foreign Wars of the United States, Fort Salonga, New York, calling to the Board's attention his knowledge of defendant's status and expressing the belief that defendant should be immediately inducted into the Armed Services. Defendant's file was not forwarded to the State Director of Selective Service following receipt of this letter.

40. On March 3, 1967, Local Board 85 mailed to defendant at his last known New York address a Current Information Questionnaire (SSS Form 127). It was returned by the Post Office on March 7, 1967, as undeliverable.

41. On March 20, 1967, Local Board 85 received a letter from the Acting Director of VISTA, Washington, D. C., that defendant completed his VISTA service and was no longer a volunteer.

42. On March 20, 1967, Local Board 85 reclassified defendant 1–A and mailed to his last known New York address a Notice of Classification (SSS Form 110) and a notice advising him of the availability of a Government Appeal Agent for consultation on any matters relating to appeal rights (SSSP 3623). It was returned on March 24, 1967, marked "unknown."

43. There was no causal relationship between this reclassification and the letters received by Local Board 85 on February 3, 1967, and February 13, 1967.

44. Local Board 85 then mailed defendant's returned-mail to his original home address in Lancaster, Pennsylvania, and defendant properly received it in New York by forward mail.

45. On March 28, 1967, defendant wrote to Local Board 85 advising them of his marriage on March 11, 1967, and requesting that his records be transferred from Local Board 85 to a Local Board in New York. The letter was received March 30, 1967.

46. On March 30, 1967, Carole J. Wagner, Assistant Clerk for the Local Board, advised defendant by letter to forward a copy of his marriage license to Local Board 85; advised defendant that Local Board 85 would always remain his Selective Service Board, with transfers available to another Board more convenient to a registrant for his physical examination or induction; and that defendant should contact Local Board 85 if he had any further questions.

47. On April 3, 1967, defendant wrote to Local Board 85 enclosing a copy of his marriage license, acknowledging receipt of his reclassification notice, but advising that he did not receive this notice until after the ten-day appeal period expired. He further requested information as to his "next course of action, since I do plan to appeal", and stated that he then appealed his classification. This letter was received by Local Board 85 on April 4, 1967.

48. By letter dated April 6, 1967, Mrs. Thelma Burie, Clerk, acknowledged receipt of defendant's marriage license and his letter of appeal; stated the reasons for his reclassification; and advised defendant that the Local Board members would be contacted to determine if they would extend the time allowed for appeal in his case.

49. On April 24, 1967, the Local Board extended defendant's time for appeal to April 4, 1967, the date on which the Board received defendant's notice of appeal.

50. On May 3, 1967, defendant was notified by mail that his time for appeal had been extended by the Local Board (SSSP–3590) and that the file had been forwarded that day to the State Appeal Board for review and consideration.

51. On May 22, 1967, Local Board 85 unanimously authorized Mrs. Lois Heller to sign all letters and forms as Acting Clerk of the Local Board in the absence, for medical reasons, of the Clerk, Mrs. Thelma Burie.

52. On May 26, 1967, the Pennsylvania State Appeal Board classified defendant 1–A and returned the file to the Local Board.

53. On June 7, 1967, Notice of this Classification was properly mailed to defendant (SSS Form 110).

54. On June 19, 1967, Local Board 85 mailed to defendant an Order to Report for Induction (SSS Form 252) on July 5, 1967, at 6:15 DST. The Order to Report for Induction was properly signed by the Acting Clerk, Mrs. Lois G. Heller.

55. On June 21, 1967, Local Board 85 received a letter dated June 16, 1967, from defendant requesting a Conscientious Objector Form (SSS Form 150) and setting forth the reasons for not completing the SSS Form 150 he previously requested on February 2, 1966.

56. Upon receipt of this letter, Lois G. Heller, Acting Clerk of the Local Board, contacted Pennsylvania State Headquarters for advice.

57. On June 21, 1967, by letter for the Local Board, Lois G. Heller, Acting Clerk, pursuant to instructions received, forwarded to defendant a copy of SSS Form 150 and advised him that his order to report for induction on July 5, 1967, was not cancelled thereby and that upon receipt of the completed Form 150 it would be reviewed by the members of the Board.

58. On June 22, 1967, Local Board 85 received an unsigned letter, in the handwriting of defendant, dated June 21, 1967, calling the Board's attention to the fact that defendant's letter dated June 16, 1967, and received by the Board on June 21, 1967, was written and mailed before receipt of the Order to Report for Induction, dated June 19, 1967. This letter also referred to an appeal from the State Appeal Board's classification and stated that defendant was "consciously (sic) opposed to wars." No reply was requested to this letter.

59. I find that defendant had received the Order to Report for Induction, dated June 19, 1967, prior to his mailing the letter received by the Board on June 21, 1967, and that the date on this letter was antedated by defendant to make it appear that it was mailed before he received the Board's Order.

60. On June 23, 1967, Lois G. Heller, Acting Clerk of the Local Board, contacted Pennsylvania State Headquarters regarding a reply to defendant's letter of June 22, 1967, and was advised that no reply was required since "correspondence not signed."

61. On July 3, 1967, Local Board 85 received a completed SSS Form 150 from defendant.

62. On July 3, 1967, the members of Local Board 85 were orally contacted by Mrs. Lois G. Heller and decided to request permission to postpone defendant's induction to review his completed Form 150. The Pennsylvania State Headquar-

ters was then contacted for permission and approval. The latter orally recommended that defendant's induction be postponed until August, 1967, to enable the Board to review the completed SSS Form 150. Written permission and approval was subsequently obtained from the State Headquarters. Defendant was so notified by mail (SSS Form 264) sent on July 3, 1967.

63. On July 6, 1967, Local Board 85 received an undated letter from defendant explaining his reasons for his absence from the induction center on July 5, 1967.

64. At the Local Board's meeting on July 17, 1967, at which were present Mr. Leon Humphreville, Chairman; Mr. Ray W. Scharfenberg, and Mr. Richard E. Neville, members, it was determined that the information submitted did not warrant the reopening of defendant's classification and that defendant should be advised to report for induction in August, 1967.

65. On July 18, 1967, by two letters for the Local Board, Lois G. Heller, Acting Clerk, informed defendant of the Local Board's decision and advised defendant to report for induction on August 1, 1967, at 6:30 A.M., DST.

66. On July 27, 1967, Local Board 85 received a letter dated July 26, 1967, enclosing a copy of a letter which defendant had sent to the Director of the Pennsylvania State Selective Service System requesting intercession and review and enclosing a copy of a letter from the American Friends Committee advising defendant to write to the State Director.

67. On July 27, 1967, Lois G. Heller, Acting Clerk of the Local Board 85, contacted Pennsylvania State Headquarters concerning the defendant's correspondence of July 26, 1967.

68. On July 27, 1967, Lois G. Heller, Acting Clerk of Local Board 85, forwarded defendant's file to the State Headquarters for review.

69. On July 28, 1967, the Pennsylvania State Headquarters returned the file to the Local Board and notified it that no action on the part of the State Headquarters was warranted.

70. On August 1, 1967, the defendant willfully and knowingly refused to submit to induction at the New Cumberland Army Depot, Harrisburg, Pennsylvania.

71. On August 4, 1967, Local Board 85 forwarded defendant's file to the State Director of Selective Service.

72. On August 9, 1967, the State Director of Selective Service requested review of defendant's file by the National Headquarters of Selective Service to determine whether he should be prosecuted for failure to report for induction.

73. On August 11, 1967, Local Board 85 received a letter from defendant dated August 8, 1967, enclosing supplemental information to his SSS Form 150 previously filed and advising that letters in support will be forthcoming. No such letters were ever received.

74. On September 8, 1967, the National Headquarters advised the State Director to refer the file back to the Local Board for a specific determination pursuant to 32 C.F.R. § 1625.2 as to whether there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.

75. On September 20, 1967, Mr. Richard Neville, Chairman of Local Board 85, informed the Pennsylvania State Selective Service System that the Local Board decided at its meeting of September 18, 1967, that there was no change in defendant's status resulting from circumstances beyond his control. Prosecution of defendant followed.

## DISCUSSION

Defendant presents a broadside of arguments in support of his motion for judgment of acquittal, viz.: (1) a quorum of Local Board 85 neither ordered nor authorized defendant for induction

nor did a quorum deny his request for a 1–O classification; (2) the order of induction was not a duly constituted determination by a majority of the members of Local Board 85; (3) the order of induction was invalid since the Clerk who signed it was not properly authorized to sign such orders by resolution entered on the minutes; (4) the order of induction was invalid since prejudicial error occurred when the Board failed to advise defendant of his opportunity to appear before them to clarify his letter of April 3, 1967; (5) the order of induction was invalid since defendant was denied a substantial procedural right when the Board gave incorrect information to defendant in response to his letter of March 28, 1967; (6) the order of induction was invalid since defendant was denied a substantial procedural right when the Local Board failed to forward defendant's file to the Appeal Board within the time period set by the Selective Service Regulations; (7) the order of induction was invalid since defendant was denied due process of law when the Local Board failed to provide defendant with the opportunity to know of the letters of February 3, 1967, and February 13, 1967, and when as a result of one letter the Local Board forwarded defendant's file to the State Director of Selective Service; and (8) the order of induction was invalid since the Local Board failed to correctly apply the Selective Service Regulations with regard to reopening and considering anew defendant's classification.

As to defendant's first argument, I find that a quorum of Local Board 85 authorized and ordered defendant to report for induction and that a quorum of Local Board 85 properly denied defendant his request for a conscientious objector classification.

Defendant's argument is based on the failure of the Selective Service System to comply with its own procedural rules, in this case, 32 C.F.R. § 1604.52(c) which reads as follows:

"The members of local boards shall be citizens of the United States who shall be residents of a county in which their local board has jurisdiction and who shall also, if at all practicable, be residents of the area in which their local board has jurisdiction. No member of a local board shall be a member of the armed forces or any reserve component thereof. Members of local boards shall be at least 30 years of age."

Specifically, defendant relies on the fact that two of the three members of Local Board 85 at the time of defendant's processing resided outside of the area of Local Board 85's jurisdiction, the City of Lancaster. He argues that because of this the Local Board does not reflect either the socio-economic, occupational or the racial make-up of its jurisdictional area and thus an order issued by the Board is invalid.

■ There is no doubt about the existence of statistics which establish the fact that there is a disparity between the percentage of Negroes in State and local populations and those who serve as Local Board members in the Selective Service System. See Report, National Advisory Commission on the Selective Service Act (1967). And, as defendant attempts to show from the 1960 Population and Housing Characteristics by Census Tracts and Civil Divisions of Lancaster County, statistics can be cited to establish disparities in income and occupation. I do not understand defendant to suggest, however, that the regulations require mathematical accuracy in the make-up of a Local Board corresponding to race, occupation, and income. A reading of the regulations indicates otherwise and, in fact, does not even require these factors to be considered in appointing Board members. All that is required is that the members be residents of the county, which they are here, and "if at all practicable" reside within the area of the Local Board. The burden of proof of

practicability is not always upon the Government as defendant suggests, but only arises when the defendant himself has presented some proof to the contrary. There is no evidence here establishing that the selection of the members of Local Board 85 was improper or impracticable in any way. In the absence of such proof, the strong presumption of regularity that attaches to the proceedings of Local Selective Service Boards controls the disposition of defendant's first argument. Chaney v. United States, 406 F.2d 809 (5th Cir.1969). Considering the fact that the defendant's Selective Service file discloses that a quorum was present whenever defendant was classified and whenever his conscientious objector form was considered in any manner and specifically when he was ordered to report for induction on August 1, 1967, I conclude that the Local Board's order to report for induction was proper.

■■ The second contention of defendant concerns the failure of the Local Board to "select and order" for induction the number of men as required by 32 C.F.R. § 1631.7[1] and the failure to prepare an order of induction for each selectee, 32 C.F.R. § 1632.1.[2] Defendant argues that the only meetings of the Board with regard to him prior to the June 19, 1967, Order of Induction were those of March 20, 1967, at which he and 93 others were classified 1–A and the meeting of April 24, 1967, at which the sole issue was the extension of his appeal time. It appears that once a registrant is classified 1–A the remaining steps in the induction process are normally performed by the Clerk of the Local Board. When properly authorized,

the Clerk has this power. 32 C.F.R. § 1604.59. In this case, Mrs. Lois Heller, the Acting Clerk, was properly authorized by resolution of the Local Board at its May 22, 1967, meeting. Basic agency principles apply to actions she performs within the scope of her authority. Thus, whenever a Clerk, or in this case the Acting Clerk, selects for induction registrants declared eligible for induction by the Local Board and then issues an order to report for induction, these actions are considered as those of the Local Board. United States v. Smith, 291 F.Supp. 63 (D.N.H.1968). I do not interpret the Regulations as requiring an actual meeting of the Board to determine the order of call once the Board has declared certain registrants eligible for induction. United States v. De-Narvaez, 407 F.2d 185 (2d Cir.1969); United States v. Hedges, 297 F.Supp. 946 (S.D.Ia.1969). The law may well be otherwise when an order to report for civilian work is required. Brede v. United States, 396 F.2d 155 (9th Cir. 1968), but see Opinion on modification, 400 F.2d 599 (9th Cir.1968), and when an order for a delinquent registrant to report is involved, United States v. Sloan, 302 F.Supp. 596 (N.D.Calif. March 26, 1969), but I am not persuaded that such a requirement should apply to the processing of a registrant such as defendant. I therefore find that the selection of defendant and his order to report for induction was a proper order of Local Board 85.

■ The third contention of defendant is likewise of little persuasion. I find that the defendant's order of induction was properly signed by the Acting Clerk of the Local Board, who was authorized

1. 32 C.F.R. § 1631.7 states, in pertinent part:
   "(a) When a call is placed without designation of age group or groups, each local board, upon receiving a Notice of Call on Local Board (SSS Form No. 201) from the State Director of Selective Service (1) for a specified number of men to be delivered for induction * * * shall select and order to report for induction the number of men required to fill the

call from among its registrants who have been classified in Class 1–A. * * * and have been found acceptable for service in the Armed Forces * * * "

2. 32 C.F.R. § 1632.1 states, in pertinent part:
   "Immediately upon determining which men are to report for induction, the local board shall prepare for each man an Order to Report for Induction (SSS Form No. 252) in duplicate."

to so perform by resolution entered on the minutes. The order of induction was dated June 19, 1968, and signed by Lois G. Heller. In the minutes of May 22, 1967, meeting of the Board, the following was noted as unanimously approved:

"Mrs. Lois Heller can sign all letters and forms with her name in acting as Local Board Clerk at time Clerk will be absence (sic) for eye operation."

The Regulation in question states:

"Official papers issued by a local board may be signed by any compensated employee of the local board if he is authorized to do so by resolution duly adopted by and entered in the minutes of the meetings of the local board: Provided, that the chairman or a member of the local board must sign a particular paper when specifically required to do so by the Director of Selective Service." 32 C.F.R. § 1604.59.

Defendant's argument is that Mrs. Heller signed his induction order at a time prior to the Clerk's absence for her eye operation. Principal reliance is placed on the testimony elicited at trial from the Clerk, Mrs. Thelma Burie, but in my opinion, this testimony (N.T. 66–67) is not as trustworthy as the testimony of Mrs. Lois G. Heller (N.T. 133–134), who flatly stated that she was Acting Clerk in the absence of Mrs. Burie on June 19, 1967. I, therefore, find as a fact that the June 19, 1967, induction order was properly signed by Mrs. Lois G. Heller.

■ As to defendant's fourth argument, I conclude that defendant was not denied a substantial procedural right when the Local Board treated his letter of April 3, 1967, as a letter of appeal and did not inquire further of defendant's intentions. I do so because I find that defendant's letter of April 3, 1967, is unambiguous. First of all, defendant admits that he received his notice of classification, which is SSS Form 110, and as a result it must be presumed that he was informed of his right to a personal appearance and appeal. United States v. Davis, 390 F.2d 879 (2d Cir. 1968); United States v. Jones, 384 F.2d 781 (7th Cir. 1967). Secondly, the very wording of defendant's letter leaves no room for doubt that defendant's sole intention was to appeal his classification and not to seek a personal appearance. Thirdly, the Clerk of the Local Board immediately took steps to inform defendant by letter of the next course of action, viz., contacting the Local Board to obtain an extension of time to appeal. In fact, this letter also sets forth the reasons for defendant's 1-A classification and the attempts made by the Local Board to notify defendant, pointing out, incidentally, that the difficulty arose from defendant's failure to keep the Local Board informed of his latest address. Fourthly, upon receipt of the Local Board's letter, defendant failed to indicate in any manner that he objected to any of the Board's reasons for reclassification or to the ".course of action" (the appeal) which was being pursued within the Selective Service System. It is this lack of ambiguity in defendant's letter which distinguishes this case from United States v. Derstine, 129 F.Supp. 117 (E.D.Pa. 1954).

■ The fifth contention of defendant concerns the information given defendant in the Local Board's letter of March 30, 1967, in reply to his inquiry of March 28, 1967. Defendant asserts that it was incorrect in that the Board failed to advise registrant of his right to transfer his case from the Appeal Board in Pennsylvania to the Appeal Board in New York and thus, defendant argues, he was denied a substantial procedural right " * * * in that an Appeal Board in New York considering the registrant's file as it appeared in May of 1967, when the appeal was forwarded, might well have considered the file in a different manner than the Pennsylvania Appeal Board." Such an assertion is purely speculative, however, and hardly makes out a prima facie case of prejudice. I find from a reading of the letters in question that no misinformation

was given defendant concerning his appeal rights. For one thing, the question of an appeal was not yet in issue. For another, it does not appear anywhere in the evidence that defendant relied to his detriment on any information so provided.

The sixth contention of defendant is another point going to the question of denial of procedural due process. Defendant asserts that 32 C.F.R. § 1626.14 [3] was violated when the Local Board forwarded his file to the State Appeal Board more than five days after the period for taking an appeal had elapsed. Prejudice occurred, according to defendant, because his appeal was " * * * considered in some order other than that in which it would have been received had the regulation been complied with." In my opinion, this is pure speculation and falls far short of what is required in this Circuit in cases which raise the question of procedural due process. United States v. Spiro, 384 F.2d 159 (3d Cir.1967). In defendant's case, the Local Board actually accorded him extra consideration by extending his time for appeal after it had expired. 32 C.F.R. § 1626.2(d). Then, in accord with its practice, it waited until its next meeting on April 24, 1967, to officially confirm its action and prepare the file for appeal. 32 C.F.R. § 1626.13. Defendant's file was then forwarded to the State Appeal Board on May 3, 1967. Under the circumstances, I do not find that defendant was prejudiced by this delay.

■ The seventh contention of defendant deals with the Local Board's failure to inform defendant of the letters received by the Draft Board on February 3, 1967, and February 13, 1967, and the failure of the Local Board to inform defendant that as a result of the first letter his file was forwarded to the State

Director. There is no doubt that the letters were adverse to defendant; however, there is nothing in the record to indicate that they played any part in defendant's 1–A classification on March 20, 1967. Not only was there a lengthy time difference between the letters and the first step in defendant's reclassification process, the sending of the Current Information Questionnaire (SSS Form 127) on March 3, 1967, but there also existed independent grounds for reclassifying defendant, viz., completion of his VISTA service. Moreover, the official position taken by the State Headquarters in reply to the February 3, 1967, letter establishes that no prejudice occurred. The same can be said of the letter of February 13, 1967, which was not answered and which resulted in no adverse action being taken by the Local Board. Furthermore, there is nothing in the Regulations or in the case law which holds that a registrant must be informed of every paper or document that finds its way into his file. This is particularly true of information which does not result in prejudice to the registrant. In this case, the letters were handled properly and in good faith at all times. It further appears from the evidence that the Clerk did not act unilaterally and without authorization of the Local Board when as a result of the February 3, 1967, letter, she forwarded the defendant's file to State Headquarters. Even assuming that she did, I am unable to conclude that this is such an inherent defect as to invalidate the defendant's March 20, 1967, 1–A classification and the June 19, 1967, order to report for induction.

The eighth and final argument in support of defendant's motion for judgment of acquittal concerns the circumstances under which a Local Board may reopen

---

3. 32 C.F.R. § 1626.14 states, in pertinent part:
"The registrant's file shall be forwarded to the appeal board * * * immediately after the period provided in § 1626.2(c) for taking an appeal has elapsed and the local board has complied with the provisions of § 1626.13, but in no event shall the file be forwarded later than five days after the period for taking an appeal has elapsed."
32 C.F.R. § 1626.2(c) provides for a thirty-day appeal period. 32 C.F.R. § 1626.13 provides for preparation of the registrant's appeal record.

and consider anew a registrant's classification pursuant to 32 C.F.R. § 1625.2.[4]

While there is indeed a conflict among Circuits on this question, as pointed out by the Third Circuit Court of Appeals in affirming this Court in United States v. Kroll, 400 F.2d 923 (3d Cir.1968),[5] the rule followed in this District is that § 1625.2 is a valid regulation and that it can foreclose consideration of conscientious objector claims made after the mailing of an induction notice. United States v. Kroll, Crim. No. 14219, M.D.Pa., June 8, 1967, and cases cited therein. See United States v. Jennison, 402 F.2d 51 (6th Cir.1968). Accordingly, since I have found in this case that defendant requested his conscientious objector form (SSS Form 150) subsequent to the mailing of his Order to Report for Induction, I must conclude that the Local Board properly determined that there was no change in defendant's status resulting from circumstances over which he had no control. Moreover, even assuming that a claim of conscientious objection may constitute such a change in registrant's status, I am unable to conclude that in this case the Local Board acted arbitrarily, capriciously or without a basis in fact in so determining. The Regulations provide that a registrant is required to report to his Local Board "within 10 days after it occurs * * * any fact that might result in the registrant being placed in a different classification." 32 C.F.R. § 1625.1(b). In this case, it is undisputed that the registrant had previously requested a conscientious objector form on February 2, 1966, after he had discontinued his studies at Howard University. He never completed and returned this form, however, Thus, there was more than ample time for defendant to notify his Local Board of his claim before being ordered to report for induction on June 19, 1967. Because of this, I find that the Local Board properly determined that no change in status existed over which the registrant had no control. United States v. Kroll, supra, 400 F.2d at 925.

It is worthy to note at this point that defendant's attempt to establish by the testimony of the Local Board members that the Board actually and improperly reopened his file at its July and September meetings without granting him the right to notice and appeal therefrom will simply not be allowed. This testimony was admitted upon defendant's representation that bias and prejudice were behind the Board's classification of defendant because of his interracial marriage. It was not estab-

4. 32 C.F.R. § 1625.2 states as follows:
  "The Local Board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; provided, in either event, the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form 252) or an Order to Report for Civilian Work and Statement of Employer (SSS Form 153) unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

5. In his opinion for the Third Circuit, former Chief Judge Austin L. Staley quoted from Judge Kaufman's opinion in United States v. Gearey, 368 F. 2d 144, (2d Cir. 1966), cert. denied 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed. 368 (1967), which states in pertinent part: "If young men eligible for the draft are permitted endlessly to challenge their status and to claim review of adverse determinations, the effect of the Selective Service System would be chaotic for manpower quotas could rarely be met with any degree of certainty."

lished, however, and thus, the strong presumption of regularity which attaches to the proceedings of Local Boards remains. Chaney v. United States, supra. The defendant therefore will not now be permitted to open defendant's classification de novo before this Court by using evidence admitted for another purpose. It is improper to question Local Board members as to their underlying reasons for a registrant's classification. Clay v. United States, 397 F.2d 901, 915 (5th Cir.1968).

Mindful of the Congressional purpose underlying the establishment of a fair, workable and responsive Selective Service System, and the function of Local Boards, it would be a mistake, in this area so vital to the security of our Country, to place the persons responsible for the implementation of the Act in an administrative "straight-jacket." Courts must be realistic in reviewing the actions of Local Boards and not impute to them a scholarly and sophisticated status that was never intended by Congress. They are volunteers and not possessed of the technological background and specialized experience common to Administrative Agencies generally, such as the Interstate Commerce Commission, the Federal Communications Commission, the National Labor Relations Board, etc. It may well be that a better method for conscription could be devised but this is a matter for Congress, and not the Courts, to decide. While we must be vigilant to protect a registrant's constitutional rights, we must be careful not to magnify each and every action of a Local Board, or its employees, in this sensitive field where queries, disputes and controversies are many and diverse, into problems of constitutional proportions. In this case, defendant has utilized every effort to avoid military service and has burdened the record with many extraneous, unwarranted and frivolous contentions and arguments. He has been afforded every protection to which he is entitled as a United States citizen and he has been allowed to "lint pick" the record in search of prejudice

and error. In my opinion, there is none and, therefore, after consideration of the record in this case and the arguments of counsel, I find Calvin Ross Johnson, Jr., guilty as charged in the indictment.