UNITED STATES of America

v.

Richard Crocker SMITH.

Crim. A. No. 6889.

United States District Court
D. New Hampshire.

Oct. 9, 1968.

William H. Barry, Jr., Asst. U. S. Atty., Concord, N. H., for plaintiff.

Alan Hall, Manchester, N. H., for defendant.

## OPINION AND ORDER

BOWNES, District Judge.

The defendant is charged with willful refusal to submit to induction into the Armed Forces of the United States in violation of Title 50 App., United States Code, Section 462.

The defendant waived his right to a jury trial and the case was heard by the Court. After the government concluded its evidence, defendant moved for a judgment of acquittal. The motion was denied at that time. This motion was renewed at the close of all the evidence. We sustain defendant's motion for acquittal.

## THE ISSUES

The defendant bases his motion for judgment of acquittal on the following reasons:

(1) That the order to report for induction was illegal; and

(2) That the defendant was deprived of due process of law by Local Draft Board No. 17 in the following respects:

(a) The Local Board ordered the defendant to report for induction out of proper order in violation of the Selective Service Act and the applicable regulations (32 C.F.R. § 1631.7);

(b) The Local Board did not reopen and reconsider the defendant's classification in violation of the Selective Service Act and the applicable regulations (32 C.F.R. § 1625.2); and

(c) The Local Board did not notify the defendant of the postponement of his induction as required by the Selective Service Act and the applicable regulations (32 C.F.R. § 1632(b)).

## THE FACTS

On October 12, 1965, the defendant registered with Local Board No. 17 in Milford, New Hampshire. On December 12, 1965, he was given an I–S (H) classification to allow him to complete his high school education. On October 18, 1966, his classification was changed to II–S, based on the fact that he was a full-time student at Northeastern University. On November 20, 1967, he was reclassified I–A because he had ceased to be a student at Northeastern University. On December 12, 1967, an Order to Report for Physical (SS Form 223—Gov't Exhibit No. 4–3)[1] was sent to him at his home address in Amherst, New Hampshire. On January 9, 1968, he underwent his physical examination at the Armed Forces Examining and Induction Center in Manchester, New Hampshire. On January 10, 1968, the defendant applied for admission as a theological student to Parkin Congregational College in Kent Town, South Australia, a recognized theological school. There was a mail strike in Australia that lasted from January 12, 1968, to January 24, 1968, and, as a result thereof, the defendant's application to Parkin College was not received by that school until January 30, 1968. On January 29, 1968, the Local Board received Notice of Acceptability (DD Form 62—Gov't. Exhibit No. 4–10) and this was mailed to the defendant on January 31, 1968. On February 8, 1968, a Notice of Call on Local Board No. 17 calling for seven inductees was received by the Local Board (Gov't. Exhibit No. 10). It is agreed that this 1968 call was not for any specific age group. On February 12, 1968, the defendant was sent Order to Report for Induction (SSS Form 252—Gov't. Exhibit No. 4–14). The date of induction was March 19, 1968. On February 13, 1968, the defendant's father received a telegram from Parkin College in Australia stating that the defendant had been accepted as a theological student. The telegram was

1. Specific pages in defendant's Selective Service file (Gov't. Exhibit No. 4) shall be identified as: Gov't. Exhibit No. 4–1, etc.

sent from Australia on the 12th of February, Australian date time. After receiving the telegram, the father of the defendant got in touch with his son who was then working in Boston and, on February 14, the father took the telegram to the Local Draft Board. The Clerk of the Local Draft Board informed the father that, because the order of induction had already been sent out, there was nothing more that could be done. The Clerk of the Local Draft Board called the State Headquarters of the Selective Service System on February 14th, informing them of the telegram and acceptance by the theological college in Australia, and she was told that the order for induction should stand. A letter to this effect was received by the Local Draft Board on February 16, 1968 (Gov't. Exhibit No. 4–17). On February 19, 1968, the defendant appeared in person at the Local Draft Board office. When he arrived there, the Board meeting was closing. The last prior monthly meeting of the Selective Service Board had been January 22nd and there were no other meetings of the Board between January 22nd and February 19th. The defendant at that time requested a change in his classification to IV–D (theological student). The Clerk informed the defendant that his classification could not be reopened because of the absence of circumstances over which the defendant had no control—or. to put it in other words, the Clerk stated that under the law there had been no change in the registrant's status resulting from circumstances over which the registrant had no control and, hence, his classification could not be reopened. Neither the Board nor the Clerk had any knowledge of the mail strike.

The in-court testimony of the defendant is in conflict with that of the Clerk, and the records of the defendant's Selective Service file (specifically, Gov't. Exhibit No. 4–18) as to what transpired on February 19th at the Local Board. The Court finds that the defendant at no time explained to the Local Board, clearly and concisely, all of the facts and circumstances pertaining to his Parkin College application. But the Court must also find that on February 19, 1968, either the Local Board or the Clerk of the Board knew that the defendant had been accepted as a theological student at Parkin College in Australia. Any knowledge of the Clerk is, of course, imputed to the Board.

Since much of the defense is focused on alleged procedural inadequacies followed by the Local Board in selecting the names of those to be called up for induction, certain facts must be found as to this procedure. The procedure followed by Local Board No. 17 relative to calling up registrants for induction is found to be as follows: The Clerk of the Board places all "I–A Acceptable" registrants' files in a special drawer arranged in chronological order by date of birth. At the time a notice of call is received from State Headquarters, the Clerk physically takes from that drawer (in chronological order, by date of birth) a sufficient number of files to fill the notice of call. The Clerk, in her discretion, also removes from the "I–A Acceptable" drawer those files that she decides are no longer "I–A Acceptable" because of changes in circumstances or conditions. The reasons for removing files from the "I–A Acceptable" drawer fall into two general categories: (1) those files which show that the individual has not been given a physical examination for a year or longer; and (2) those files for which information is supplied to the Local Board that would affect the classification of the individual. The Clerk's decision to remove certain files from the "I–A Acceptable" drawer was a decision based either on her own knowledge of the Selective Service Act and applicable regulations or on the local practice of Board No. 17 relative to physical examinations. There is no evidence that the Clerk, "on her own," arbitrarily removed any "I–A Acceptable" files from the drawer.

It has been the operating procedure of Local Board No. 17 to require a second physical examination of a I–A classified

registrant prior to induction if his last physical was one year or more prior to the date of the notice of induction. This practice is not authorized by any regulation or any provision of the Selective Service Act, but is based on a telegram from the Director of the Selective Service System, dated September 21, 1961 (Gov't. Exhibit No. 5). See also letter of September 30, 1960 (Gov't. Exhibit No. 6). Both of these exhibits, originally marked for identification only, are now part of the evidence. Army regulations make specific provisions for a complete physical to be given at the receiving and induction center to "Registrants forwarded for induction when more than 1 year have [sic] elapsed since they were found medically qualified on a complete medical examination, either as registrants for induction or as applicants for enlistment." (Gov't. Exhibit No. 8 ¶ 68–2).

The Clerk of the Local Board testified that she signed induction orders by direction of the Board. On cross-examination, she stated that there was no express authority in the minutes of the Board meetings authorizing her so to sign, but that she did so by direction of the Board and that there was, in fact, a written authorization to her from the Board allowing her to sign both the orders to report for physical examination and for induction. This written authority was not produced at the hearing.

The defendant's induction was postponed by National Headquarters on March 13, 1968; no notice of this action was communicated to the defendant and this postponement was withdrawn on March 18, 1968.

### RULINGS AND FINDINGS

(1) *Was the Order to Report for Induction Illegal?*

█ The Court rules that the Clerk of the Draft Board, Mrs. Maley, had the authority to sign the notice to report for physical examination and the notice to report for induction. Although, technically speaking, her authorization may not have been in the form specifically required by the regulations, the Court must take into consideration the fact that Mrs. Maley has been so acting for some time, that the Board undoubtedly knew of this practice, and that the Board intended that she have this authority. Furthermore, no one, including the defendant, is prejudiced by her actions. While it is true that the Clerk acted unilaterally in carrying out her functions, it is the type of action which is required if the Board is to operate efficiently. There is nothing to suggest that the Clerk acted in any way contrary to the directions of the Board. The functions performed by Mrs. Maley were those to be expected of a well-trained and experienced Clerk. In the case of Eagles v. United States ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 319, 91 L.Ed. 308 (1946), the Court said at page 314: "Not every procedural error, but only those so flagrant as to result in an unfair hearing render the proceedings vulnerable in a collateral attack."

(2) *Was the Defendant Called in the Proper Order?*

█ It is clear that due process and elemental fairness in the operation of the Selective Service System must insure that each individual is called in the proper order. This order is carefully defined in the regulations:

(3) Nonvolunteers who have attained the age of 19 years and have no [sic] attained the age of 26 years and who (A) do not have a wife with whom they maintain a bona fide family relationship in their homes, *in the order of their dates of birth with the oldest being selected first,* or (B) have a wife whom they married after the effective date of this amended sub-paragraph and with whom they maintain a bona fide family relationship in their homes, *in the order of their dates of birth with the oldest being selected first.* [Emphasis supplied.] 32 C.F.R. § 1631.7(a) (3).

In the case of United States v. Lybrand, 279 F.Supp. 74, at page 77 (E.D. N.Y.1967), the court noted: "It seems

clear that not every departure by a local board from standard practice, not each minor slip, deprives a local board of jurisdiction and invalidates its order." But that case held "that proof of proper order of call is an element of the offense. * * * [And] if defendant is called out of turn, the order of induction lacks jurisdictional basis and he is justified in refusing to obey it." 279 F. Supp. 74 at 81.

▮▮ The Court rules that the procedure followed by the Clerk in maintaining the so-called "I–A Acceptable" file drawer was proper insofar as it was based on information that the Clerk knew or had good reason to believe would probably affect the classification of "I–A Acceptable" individuals. There has to be room for some administrative discretion and judgment in order for any statute to be effectively and efficiently administered. If the clerk of a local draft board knows, or has good reason to believe, that certain individuals, because of a change in their status, should no longer be classified I–A, or knows that the board may change the I–A classification because of certain changes in the status of such individual, common sense requires that the Clerk remove those files from the "I–a Acceptable" drawer so that the board may act and effect any required changes.

▮ At the time the defendant was classified "I–A Acceptable," there were nine other individuals so classified who were older than the defendant, and who, therefore, if it were not for other factors, should have been included in the draft call issued February 12, 1968, for induction on March 19, 1968. See Gov't. Exhibit No. 9. The Court finds that as to six of these nine individuals there was ample reason under the Act and the regulations for the Clerk to "pull" their files from the "I–A Acceptable" drawer. To be specific, the Court finds that the removal of the files of Holland, Seagroves, Halsall, Bates, Reynolds, and Lawton was proper administrative procedure. The action of the Clerk in re-moving these files was based on specific regulations and was clearly not arbitrary. The act of the Clerk, however, in removing the files of Fogg, Dutton, and Pirog was not based on any regulation, but derived purely from a local practice which we rule resulted in the defendant being arbitrarily ordered to report for induction out of the proper order.

▮ There can be no doubt that when the clerk of a local draft board removes from the "I–A Acceptable" file drawer the names of certain individuals, she is, in effect, determining who is going to be called for induction. As long as this determination is consistent with the Selective Service Act and the regulations, it is a proper administrative function—but there is no requirement, or even suggestion, in the regulations that a registrant, previously classified "I–A Acceptable" should have that status modified merely because of a year's lapse since the date of his qualifying physical. The Court points out that the Local Board's practice and procedure of requiring another physical examination of those who would otherwise be called for induction could effectively prevent the induction of individuals otherwise in every respect inductible under the Act. At the very least, it had the inevitable effect of postponing the induction of some registrants and accelerating the induction of younger men further down on the list.

The Court must also take judicial notice of the facts of modern Selective Service life: calls are infrequent and irregular, and, in a town such as Milford, the number actually called for induction is always relatively small. Under these circumstances, the Local Board's requirement of "another" physical examination results, in effect, in *reclassification*, both for those who are required to undergo the physical and those who have been examined within the year.

▮ The Board seems to base its "additional" physical examination requirement on a telegram from General Lewis B. Hershey, dated September 21, 1961

(Gov't. Exhibit No. 5), which reads as follows: "Registrants found acceptable at AFES more that [sic] a year previously should be reexamined before induction unless State Director determines it administratively inadvisable." In the first instance, the Court would point out that this telegram does not offer or purport to be supported by any regulation. The Court also notes that the telegram can reasonably be interpreted to mean that the Local Board should never allow a I–A registrant's physical condition to go unexamined for more than a year at a time. The telegram could well mean that the Local Board should see to it that all registrants in the "I–A Acceptable" file are kept current, as far as physical examinations are concerned.

Furthermore, Army regulations require a complete physical at the receiving and induction center. In the light of this, there seems to be no reason, nor has one been suggested, why a registrant should have his induction postponed because he has not been examined within one year. In this connection, it is important to point out that Major Davis, Assistant Manpower Officer for the State of New Hampshire, testified that the State Headquarters always issues a call for more inductees than are actually required. The Court must assume that State Headquarters in issuing its notice of call takes into consideration the fact that the physical examination given by the Army at the time of induction will result in the rejection of some inductees.

(3) *Was the Defendant's Request That He Be Reclassified Considered by the Board?*

As the Court sees it, the issue here is not whether the Local Board erred by failing to grant him a IV–D classification under 32 C.F.R. § 1625.2(b), but whether the Local Board did, in fact, *consider* the new circumstances that were made known to it, specifically, that the defendant had been admitted to Parkin Theological College in Australia.

The government relies on Exhibit 4–18 (summary of registrant's appearance before Board on February 19) as evidence that the Board did consider the defendant's new claimed status and did make a decision with regard to it. However, the Court does not so construe this exhibit. A careful reading of all of Exhibit 4–18 convinces the Court that the Local Board was not considering any new facts, but was determined to let the order of induction stand because the defendant's "rights were expired." The last paragraph of this exhibit states that "The Board unanimously decided not to change his classification or cancel his IND. They only go by what's in the file." Although, as mentioned above, the defendant's statements to the Board on February 19th were lacking in clarity and detail, the Board did know that he had been accepted at an acknowledged theological school. This knowledge required a hearing and full consideration of the defendant's claim. The Seventh Circuit has held:

> While classification is the democratic method for obtaining military manpower it is not an adversary proceeding between Board and registrant in which the slightest mis-step mechanically penalizes registrants. United States v. Greene, 220 F.2d 792, 794 (7th Cir.1955).

In the case of United States ex rel. Berman v. Craig, 207 F.2d 888 (3rd Cir.1953), the court stated:

> Sections 1625.1 and 1625.2 of the Regulations taken together require a local board to consider anew the classification of a registrant who reports, within 10 days after it occurs, a change in his status which may require his reclassification. This it is the board's duty to do even though, as here, an order to report for induction has been sent to the registrant, provided he has not yet been inducted. 207 F.2d 891.

United States v. Burlich, 257 F.Supp. 906 (S.D.N.Y.1966), points out that the

refusal to reopen offends elemental due process:

> By the refusal of reopening, the defendant was deprived of the opportunity to explain his case to the members of the Board and to bring to their attention additional evidence in support of his application, * * *. Moreover, had a reopening been granted, not only would the defendant have been entitled to appear personally before the Board but, even had he again been classified I–A, he would also have been entitled to an administrative appeal from the denial of his dependency deferment claim. 257 F. Supp. 912.

See also Miller v. United States, 388 F. 2d 973 (9th Cir.1967).

■ The Court is neither suggesting, nor intimating, that the classification of the defendant should then have been changed or should now be changed. The Court is, however, finding and ruling that the Board, by its failure to consider the defendant's *claim* to a new classification, arbitrarily deprived him of his fundamental right to due process.

United States v. Gearey, 368 F.2d 144 (2nd Cir.1966), holds that although a registrant's claim of exemption as a conscientious objector was not raised prior to his receipt of "Notice to Report for Induction," he was, nevertheless, entitled to all of the procedural safeguards provided in the regulations. The court found specifically that "it would be improper to conclude that an individual is not a genuine conscientious objector because his beliefs did not ripen until after he received his notice, * * *." 368 F.2d 149.

It seems clear to the Court from the testimony of Mrs. Maley and from Exhibit 4–18, that the Board's decision to maintain the defendant as I–A was based primarily on the fact that the order of induction notice had already been sent to him—not to any consideration of the claimed new status facts and a *considered rejection* of that claim. See United States v. Walsh, 279 F.Supp. 115 (D.Mass.1968).

The Court wishes to make it emphatically clear that no determination of the classification of the defendant is here implied or intended. Our holding is deliberate and restricted: the classification arrived at by the Board was not in conformity with the regulations. In this connection, see Estep v. United States:

> * * * [t]he courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards *made in conformity with the regulations* are final even though they may be erroneous. 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567 (1946). [Emphasis supplied.]

*(4) Was the Defendant Deprived of Due Process of Law Because the Local Board Did Not Notify Him of the Postponement of His Induction?*

■ The Court does not find that this failure offended due process or jeopardized the defendant's rights in any way. The defendant at no time knew that his induction had been postponed, and no reason has been advanced as to any difference it would have made if he had been so informed. Sending of SSS Form 264 (Notification of Postponement of Induction) to the defendant, under these circumstances, would have accomplished nothing, and, conversely, the failure to so notify the defendant did not in any way jeopardize his rights.

For the foregoing reasons, the defendant is found not guilty as charged and is ordered discharged.