See also, D.C., 275 F.Supp. 1013.

**UNITED STATES of America,
Plaintiff,**

v.

**Marc Anthony LEWIS, Defendant.**

**No. 66-CR-135.**

United States District Court
E. D. Wisconsin.

July 31, 1969.

Robert J. Lerner, U. S. Atty., by Thomas R. Jones, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

William J. Mulligan, Milwaukee, Wis., for defendant.

## OPINION AND ORDER

REYNOLDS, District Judge.

The defendant, Marc Anthony Lewis, is charged in a one-count indictment with willfully and knowingly refusing induction into the Armed Forces of the United States on June 22, 1966, in violation of Title 50 App. of the United States Code of Laws § 462.

In selective service cases it is the policy of this court to give the defendant every opportunity to reconsider his decision to refuse induction into the Armed Forces. Following this policy, an arrangement was worked out between the defendant and counsel, and with the approval of the court, whereby the defendant consented to report for induction on

December 11, 1967, with the understanding that if he was inducted or if he was refused induction for a reason beyond his control, he would not be prosecuted for his refusal to submit for induction on June 22, 1966.

The defendant reported for induction as agreed, but because he was at that time on probation for a state felony conviction (i. e. possession of marijuana), he was found morally unacceptable for military service and subsequently reclassified I–Y (qualified for military service only in war or national emergency). Since the defendant had been refused induction solely on account of his own criminal conduct subsequent to his refusal to report for induction on June 22, 1966, the Government proceeded with its prosecution of this matter.

The matter was tried to the court on March 10, 1969, at which time the defendant was technically still classified I–Y. At the outset of the trial, however, the defendant was informed that as a result of cooperative efforts between the Government and the State, an arrangement had been worked out according to which the State would terminate his remaining period of probation if he would report for induction, and such probation having been terminated, the Armed Forces would accept him for induction. The defendant nevertheless stated that even under these circumstances he would refuse to submit for induction as long as black Americans are denied equal treatment.

At the conclusion of trial, the defendant moved for a judgment of acquittal on the grounds that (1) he had been denied due process of law during his classification by the Selective Service System, (2) his June 3, 1966, order to report for induction had been invalidly issued, (3) his refusal to submit to induction on June 22, 1966, had not been "willfully and knowingly" made, and (4) his June 3, 1966, order to report for induction had in effect been cancelled by his subsequent I–Y classification.

Counsel were requested to submit proposed post-trial findings of fact and conclusions of law. Following the filing of such findings and conclusions, the matter was taken under advisement, and it is now ready for decision.

FINDINGS OF FACT

Defendant has requested that the court make specific findings of fact and conclusions of law pursuant to Rule 23(c) of the Federal Rules of Criminal Procedure. Based on the testimony and exhibits introduced at trial, I find the facts pertinent to this action to be as follows:

The defendant is an intelligent, idealistic twenty-three year old Negro who was born in Milwaukee, Wisconsin, on July 8, 1945. He graduated from Milwaukee's Riverside High School and completed two years at Howard University. In recent years he has been active in the civil rights movement. He has participated in demonstrations in Milwaukee as well as in registering Negroes to vote in Alabama. He has worked with the Milwaukee United School Integration Committee, the Southern Christian Leadership Conference, and the Student Nonviolent Coordinating Committee.

On May 17, 1965, the defendant registered for the draft and completed his classification questionnaire (SSS Form 100) wherein he did not claim to be a conscientious objector.

On May 24, 1965, he was classified I–A (registrant available for military service) by Milwaukee County Selective Service Board No. 44 (hereinafter "Local Board"). The defendant has indicated that upon receipt of this classification notice and the accompanying notice of right to a personal appearance and/or an appeal, he gave no thought to appealing his I–A classification.

On July 23, 1965, he was ordered, by mail, to report for a physical examination on August 13, 1965, and he failed to report; on August 27, 1965, he was ordered, by mail, to report for a physical examination on September 17, 1965, and

he failed to report; on September 23, 1965, he was ordered, by mail, to report for a physical examination on October 6, 1965, and he failed to report; and on November 9, 1965, for the fourth time, he was ordered, by mail, to report for a physical examination on November 29, 1965. On November 29, 1965, he did report for his physical examination. The defendant was subsequently found physically qualified for military service.

On December 16, 1965, the defendant went to his Local Board and obtained an SSS Form 150 which is used by registrants to apply for conscientious objector classification. The defendant did not fill out or file the SSS Form 150 on this occasion.

The defendant was found acceptable for induction and ordered by his Local Board to report at the induction station in Milwaukee on March 18, 1966. Defendant did not report for induction as ordered. Instead, he filed an SSS Form 150 with his Local Board on March 21, 1966. In this form he stated that being a Negro, he personally felt that he could not, in good faith, serve in the Armed Forces of the United States as either a combatant or a noncombatant until granted the same opportunities and protections under the law as other citizens.

On May 16, 1966, the Local Board met and reopened the defendant's classification despite his earlier refusal to report for induction. On this occasion the Local Board reviewed the defendant's conscientious objector claim but again classified him I–A. On May 17, 1966, a notice of classification (SSS Form 110) classifying the defendant I–A was sent to the defendant in Eutaw, Alabama. Accompanying this notice was a notice of the defendant's rights regarding a personal appearance before the Local

Board and appeal of the Local Board's decision. The defendant admits to living at the Eutaw, Alabama, address in May, but denies having received the notice.

The State Director of the Selective Service System issued a call to the Local Board for twelve men to report for induction on June 22, 1966. The Local Board did not meet after receiving this notice of call to determine which registrants would be ordered to report for induction on June 22, 1966. Rather, the clerk of the Local Board, Mrs. Amanda Federspiel, followed the standing operating procedure which had been established at the Local Board. More specifically, I find the procedure followed by Local Board 44 relative to calling up registrants for induction, including this defendant, to be as follows: When a registrant is classified I–A at a meeting of the Local Board, the Board clerk places such registrant's name in a special "desk copy" book which is prepared and kept by the Board clerk. This book contains the names of all the Local Board's registrants who have been classified I–A by action of the Local Board and are qualified and available for military service.

These registrants' names are listed in chronological order according to date of birth, the oldest of such registrants being listed first. When the Board clerk receives a notice of call from the State Selective Service Headquarters, it is not the practice of Local Board 44 to meet again to determine the names of those registrants who shall be called for induction in order to fulfill the Local Board's quota. Rather, the clerk prepares an induction call list according to the priorities set forth in Selective Service Regulation 1631.7.[1] This regula-

---

1. "§ 1631.7 *Action by local board upon receipt of notice of call.*

"(a) When a call is placed without designation of age group or groups, each local board, upon receiving a Notice of Call on Local Board (SSS Form No. 201) from the State Director of Selective Service (1) for a specified number of men to

be delivered for induction, or (2) for a specified number of men in a medical, dental, or allied specialist category to be delivered for induction, shall select and order to report for induction the number of men required to fill the call from among its registrants who have been classified in Class I-A and Class I-A-O and have

tion provides that delinquents and volunteers are to be ordered to report for induction before nonvolunteers are so ordered.[2] After listing the delinquents and volunteers as prescribed in the regulation, it is the practice of Local Board 44 for the Board clerk to fill the remainder of the call with nonvolunteers by removing from the "desk copy" book the names (in chronological order beginning with the oldest listed registrant) of that number of I–A registrants

necessary to fulfill the remainder of the quota as established by the notice of call. The Board clerk then proceeds to prepare and sign forms ordering the registrants so selected to report for induction on a specified date.

Following the procedure just described, the clerk of the Local Board prepared an induction list for June 22, 1966. The Local Board's quota for that date, as established by the state notice of call, was twelve. The defendant stood sixth,

been found acceptable for service in the Armed Forces and to whom the local board has mailed a Statement of Acceptability (DD Form No. 62) at least 21 days before the date fixed for induction: *Provided*, That a registrant classified in Class I-A or Class I-A-O who is a delinquent may be selected and ordered to report for induction to fill an induction call notwithstanding the fact that he has not been found acceptable for service in the Armed Forces and has not been mailed a Statement of Acceptability (DD Form No. 62): *And provided further*, That a registrant classified in Class I-A or Class I-A-O who has volunteered for induction may be selected and ordered to report for induction notwithstanding the fact that he has not been found acceptable for service in the Armed Forces and regardless of whether or not a Statement of Acceptability (DD Form No. 62) has been mailed to him. Such registrants, including those in a medical, dental, or allied specialist category, shall be selected and ordered to report for induction in the following order:

"(1) Delinquents who have attained the age of 19 years in the order of their dates of birth with the oldest being selected first.

"(2) Volunteers who have not attained the age of 26 years in the sequence in which they have volunteered for induction.

"(3) Nonvolunteers who have attained the age of 19 years and have no [sic] attained the age of 26 years and who (A) do not have a wife with whom they maintain a bona fide family relationship in their homes, in the order of their dates of birth with the oldest being selected first, or (B) have a wife whom they married after the effective date of this amended subparagraph and with whom they maintain a bona fide family relationship in their homes, in the order of their dates of birth with the oldest being selected first.

"(4) Nonvolunteers who have attained the age of 19 years and have not attained the age of 26 years and who have a wife whom they married on or before the effective date of this amended subparagraph and with whom they maintain a bona fide family relationship in their homes, in the order of their dates of birth with the oldest being selected first.

"(5) Nonvolunteers who have attained the age of 26 years in the order of their dates of birth with the youngest being selected first.

"(6) Nonvolunteers who have attained the age of 18 years and 6 months and who have not attained the age of 19 years in the order of their dates of birth with the oldest being selected first.

In selecting registrants in the order of their dates of birth, if two or more registrants have the same date of birth they shall, as among themselves, be selected in alphabetical order."

2. The testimony of the Board clerk, Mrs. Federspiel, indicates that she followed the order of call set forth in Regulation 1631.7. In testifying from her memory as to the exact order set forth in that regulation, she stated that volunteers were first, delinquents second, and nonvolunteers who have attained the age of nineteen and have not attained the age of twenty-six are third.

Her testimony as to the exact order is incorrect as to the relative order of delinquents and volunteers. Having had the opportunity to observe her during the testimony, however, I am of the opinion that she either misspoke or was temporarily mistaken as to the exact order of call as set forth in the regulation. It is clear from her testimony taken in its entirety that with regard to the induction list prepared for June 22, 1966, she followed the order of call *as set forth in the regulation*.

both in age and in order, on the induction list prepared by the clerk.[3]

On June 3, 1966, an order to report for induction in Milwaukee on June 22, 1966, was sent to the defendant in Alabama. He admits receiving this order "early in June," yet he made no effort to contact his Local Board until the afternoon of June 21, 1966. On that day he made two phone calls from Milwaukee to his Local Board and to the State headquarters in Madison. The Local Board' personnel told the defendant that at that time he no longer had a right to pursue his claim to a different draft status. On June 22, 1966, the following day, the defendant reported to the induction center but refused to submit to induction.

On September 29, 1966, the defendant was indicted by a Federal Grand Jury for having refused to submit for induction on June 22, 1969.

On April 17, 1967, the defendant was granted a "courtesy hearing" by his Local Board. At the hearing the defendant contended that he could not accept military service because he was a black American.

In September 1967, the defendant was convicted in the Circuit Court of Milwaukee County for possession of marijuana, a felony under Wisconsin law, and placed on probation.

Subsequently, on December 11, 1967, the defendant reported for induction into the military service pursuant to an agreement entered into before this court on December 7, 1967.[4] He was found physically and mentally acceptable for military service. Although the defendant

was prepared at that time to submit to induction, he was found not acceptable for moral reasons (on probation for felony conviction). The Local Board notified the defendant on February 28, 1968, that he was not acceptable for induction. On March 18, 1968, the Local Board classified the defendant I-Y (qualified for military service only in war or national emergency). The defendant is presently still classified I-Y.

On May 31, 1968, the State Headquarters of the Selective Service System notified the United States Attorney that they had explored the possibility of a moral waiver being granted to permit the defendant's induction, but that their request for such a waiver had been denied by the Armed Forces Examining and Entrance Station.

Subsequent thereto, the United States probation officer, at my request, explored the possibility of having the defendant's remaining term of state probation terminated on the condition that he report for induction. At the time of trial, the defendant was notified that such an arrangement could be worked out and that under such circumstances he would be acceptable for induction. The defendant now again refuses to submit for induction and states that as long as black Americans are denied equal treatment he will continue to refuse to accept any form of military service.

## CONCLUSIONS OF LAW

The record clearly establishes that the defendant was classified I–A by the Local Board on May 16, 1966; was ordered to report for induction by an order issued on June 3, 1966; .and refused to

---

3. The defendant contends that because the Government did not prove the exact number of delinquents and volunteers available for induction on June 22, 1969, the Government has failed to prove that the Local Board followed the order of call required by Regulation 1631.7. The records of the Local Board were made available to the defendant at the time of trial. He could have entered any of them into evidence and adduced any additional tes-

timony he wished. Having chosen not to do so, and having failed to clearly establish that the order of call was improper, the Government is entitled to a presumption of regularity. United States v. Sandbank, 403 F.2d 38 (2d Cir. 1968).

4. At the time that this agreement was entered into, this Court did not know of the marijuana conviction and the subsequent probation.

**516**

submit to induction on June 22, 1966. The defendant contends, however, that he is entitled to a judgment of acquittal for one or more of the following reasons.

## I.

## HAS THE DEFENDANT BEEN DENIED DUE PROCESS OF LAW?

The defendant contends that he is entitled to a judgment of acquittal because his induction order was voided by violations of his fifth amendment due process rights which occurred during the classification procedure. The violations he complains of are (A) that the Local Board did not appoint an adviser to assist him, (B) that no member of the Selective Service System or the Military Induction Force ever informed him of the legal requirements for conscientious objector classification, and (C) that he was never informed of the reasons behind the Local Board's denial of his conscientious objector claim.

## A. "FAILURE" TO APPOINT AN ADVISER

■ The defendant contends that the "failure" of the Selective Service System to appoint an adviser to assist him in the preparation of his claim for a conscientious objector classification and an appeal from the Local Board's decision constituted a violation of his right to due process of law as guaranteed to him by the fifth amendment to the United States Constitution. I know of no authority to the effect that the Constitution requires that a registrant be provided with free advice and assistance either in preparing questionnaires and forms for submission to his local draft board or with respect to other matters relating to his liabilities under the selective service law. In fact, the authority is to the contrary. Bradshaw v. United States, 242 F.2d 189 (10th Cir. 1957); Steele v. United States, 240 F.2d 142 (1st Cir. 1956). See also United States

v. Jones, 384 F.2d 781 (7th Cir. 1967) (concurring opinion).

Consequently, a registrant's "right" to aid in his dealings with the Selective Service System is limited to that conferred by statute or regulation. The Universal Military Training Act does not provide for the appointment of advisers to registrants. Selective Service Regulation 1604.41, however, provides:

"§ 1604.41 Appointment and duties.

"Advisors to registrants may be appointed by the Director of Selective Service upon recommendation of the State Director of Selective Service to advise and assist registrants in the preparation of questionnaires and other selective service forms and to advise registrants on other matters relating to their liabilities under the selective service law. Every person so appointed should be at least 30 years of age. The names and addresses of advisors to registrants within the local board area shall be conspicuously posted in the local board office." 32 C.F.R. § 1604.41 (1968).

The parties have stipulated that at no time from the defendant's registration to the present time has the Local Board appointed advisers or posted a list thereof.

■ It is clear from my reading of this regulation that it does not require the Selective Service System to appoint advisers to registrants. Rather, the matter of appointments, if any, is placed within the joint discretion of the National and State Directors. The matter of appointments being discretionary, no "right" of the defendant has been violated by the "failure" of the Selective Service System to appoint an adviser to assist him.

■ However, even if this regulation were to be construed as granting registrants a "right" to an adviser, the defendant has not made, and in my opinion cannot make, the requisite showing that

he was in fact prejudiced by the absence of such counsel. United States v. Spiro, 384 F.2d 159 (3rd Cir. 1967); United States v. Jones, supra; Bradshaw v. United States, supra; Rowton v. United States, 229 F.2d 421 (6th Cir. 1956), cert. denied 351 U.S. 930, 76 S.Ct. 788, 100 L.Ed. 1460 (1956); United States v. Manns, 135 F.Supp. 624 (N.D.Ill. 1955), aff'd 232 F.2d 709 (7th Cir. 1956).

The defendant's course of conduct can only lead to the conclusion that his claim to conscientious objector status was not made in good faith. I believe that as an intelligent and politically aware young man, Marc Anthony Lewis knew at the time he filed his claim that it was without legal basis. (In any event, he was certainly advised of that fact in my earlier opinion on his motion to remand, and he still refuses to submit to induction.)

The defendant's course of conduct also reveals a total disregard for the administrative procedures available to him. Being of the opinion that the defendant filed what he knew to be a patently frivolous claim, and having noted his wilful disregard for any of the means available for pursuing his claim, I must conclude that the appointment of an adviser would not have altered the circumstances whatsoever and that the defendant was not prejudiced by the Selective Service System's "failure" to appoint an adviser.

B. "FAILURE" TO INFORM THE DEFENDANT OF THE LEGAL REQUIREMENTS FOR CONSCIENTIOUS OBJECTOR CLASSIFICATION

■ What I have said and concluded with regard to the "failure" to appoint advisers is equally applicable to the defendant's contention that the Selective Service's "failure" to inform him of the legal requirements for classification as a conscientious objector constituted a denial of his due process rights. I conclude that this contention is likewise without merit.

C. "FAILURE" TO INFORM THE DEFENDANT OF THE GROUNDS FOR THE LOCAL BOARD'S DENIAL OF HIS CONSCIENTIOUS OBJECTOR CLAIM

■ Neither the Military Training Act nor the regulations promulgated pursuant thereto require that a Local Board set forth the grounds for its decision. A Local Board is not required to state exactly what elements they considered in denying a requested classification. The requirement that a Local Board keep minutes [Regulation 1626.25 (c), 32 C.F.R. § 1626.25 (1968)] is satisfied by a formal record of action taken and cannot be construed to require a detailed explanation for such action. Ayers v. United States, 240 F.2d 802 (9th Cir. 1956), cert. denied 352 U.S. 1016, 77 S.Ct. 563, 1 L.Ed.2d 548 (1957).

II.

WAS THE JUNE 3, 1966, ORDER TO REPORT FOR INDUCTION VALIDLY ISSUED?

■ Defendant urges that he was justified in refusing to report for induction on June 22, 1966, because the order requiring him to report was not in fact an order of the Local Board as required by the Selective Service Regulations. Selective Service Regulation 1631.7(a), which deals with ordering into service registrants who have been classified I-A, provides that "each local board * * * shall select and order to report for induction the number of men required to fill the call from among its registrants who have been classified I-A * * *."[5] It is the defendant's contention that the June 3, 1966, order was issued by the Board clerk and not by the Local Board as is required by this regulation.

---

5. See text of regulation set forth in footnote 1, supra.

The issue raised by defendant has been litigated on numerous occasions over the past year. In Brede v. United States, 400 F.2d 599 (9th Cir. 1968), modifying 396 F.2d 155 (9th Cir. 1968), the Ninth Circuit Court of Appeals was confronted with the interpretation of an analogous Selective Service Regulation, Regulation 1660.20(d), which prescribes the procedure to be followed in ordering a conscientious objector to report for civilian work assignment. In that case, the Local Board determined, at a meeting at which a representative of Selective Service was present, that a particular job was available and appropriate for the registrant. When the approval of the Director was obtained, an SSS Form 153 (order to report for civilian work assignment) was mailed to the registrant by the Board clerk without specific instructions by the Local Board to do so. The court held that Regulation 1660.20 (d) requires the Local Board to meet and order the registrant to report for civilian work assignment, and that it does not authorize the Board clerk to order a I-O registrant (conscientious objector) to report for civilian work without a meeting and approval of the Local Board members. The court went on to express the opinion, however, that the Local Board's determination to order the registrant to report may be made either (1) after receipt of the Director's authorization, or (2) before receipt of such authorization in cases where it is established by administrative practice that the Local Board's determination that certain work is appropriate constitutes an implied order to report for such work, subject to the appropriate authorization and notice to the registrant. Under the latter procedure, the action of the Board clerk is viewed as merely a ministerial implementation of that "implied order," and the Form 153, therefore, is regarded as an order of the Local Board.

The Fifth Circuit Court of Appeals reached a similar conclusion in Davis v. United States, 402 F.2d 513 (5th Cir. 1968). The court ruled that after the Local Board has met and determined that a I-O registrant is qualified for certain available civilian work, it is not required to meet again to consider the registrant's case after the approval arrives from the Director, since the "critical exercise of administrative judgment" has already been made. To the same effect are the opinions in United States v. Isenring (No. 67–CR–151, E.D.Wis., March 6, 1969—unreported opinion), and United States v. Mendoza, 295 F.Supp. 673 (E.D.N.Y.1969).[6]

Two recent decisions in the Western District of Wisconsin, however, reach an opposite conclusion. In Cupit v. United States, 292 F.Supp. 146 (W.D.Wis.1968), and Hestad v. United States (302 F.Supp. 1188, W.D.Wis.1968), the court ruled that an order of the Local Board to report for civilian work assignment may not be implied from the conduct of the Board in recommending particular civilian work to be performed in lieu of induction. The court stated that to, imply such an order would raise a serious constitutional issue under the due process clause of the fifth amendment. Therefore, the court construed the regulations as contemplating "an express and reasonably definite and specific motion or resolution deliberated upon and approved by a majority of the local board, whether unconditionally and after approval by the National Director, or conditionally and prior to such approval, and set forth clearly and understandably in some readily accessible record maintained by the local board."

The cases involving orders to report for induction as compared to civilian work assignment are also in disagreement as to whether a practice similar to that followed by Local Board 44 gives rise to an inference of authorization from the Local Board to the Board clerk to issue orders for induction in accordance with an established procedure.

6. For a fuller explanation of my approach to this issue, see United States v. Buckley, 300 F.Supp. 991 (E.D.Wis. June 25, 1969).

In United States v. Lott, Cr. No. 1921 (C.D.Calif., Oct. 9, 1968), the court held that in view of the specific requirement that the Local Board "shall select and order" an inference of authorization based on prior practice was impermissible.

An opposite conclusion was reached in United States v. Smith, 291 F.Supp. 63 (D.N.H., 1968). On that occasion the court held that "Although, technically speaking, [the Board clerk's] authorization may not have been in the form specifically required by the regulations, the Court must take into consideration the fact that [the Board clerk] has been so acting for some time, that the Board undoubtedly knew of this practice, and that the Board intended that she have this authority. Furthermore, no one, including the defendant, is prejudiced by her actions. While it is true that the Clerk acted unilaterally in carrying out her functions, it is the type of action which is required if the Board is to operate efficiently. There is nothing to suggest that the Clerk acted in any way contrary to the directions of the Board. The functions performed by [the Board clerk] were those to be expected of a well-trained and experienced Clerk."

There is no testimony in the present record to indicate that the Local Board ever specifically authorized the Board clerk, Mrs. Federspiel, to select names from the "desk copy" book in a certain chronological order and then order such registrants to report for induction. On the other hand, it does appear that the procedure followed by Mrs. Federspiel in this case was the established operating procedure of Local Board 44, and it must be presumed that the Local Board members were aware of such procedure and by permitting such procedure to continue gave their approval to this established practice.

Although the facts of this case differ somewhat from those in United States v. Smith, supra, I am of the opinion that the reasoning behind that decision is applicable to the present determination. The court, therefore, is of the opinion that the Board clerk, Mrs. Federspiel, was authorized to prepare the induction list and issue the induction orders *on behalf of* the Local Board, and as a consequence, I conclude that the induction order in question was validly issued. In so holding, I am satisfied that the exercise of administrative judgment and discretion contemplated by the Selective Service Regulations was performed at the time the defendant was classified I-A. A classification of I-A is a determination that a registrant is qualified for military service. Having been so qualified, the process by which he is formally called up for induction is a ministerial procedure, which reason indicates can be delegated to the Board clerk subject to the guidelines contained in the regulations, and which efficiency of operation requires be so delegated.

Defendant contends, however, that there are a number of judgment factors involved in interpreting the order of call which necessitate that the Local Board meet and consider the file of each man under consideration for induction. While the provisos to Selective Service Regulation 1631.7(a) do grant the Local Board limited discretion in deviating from the normal order of call-up, such alteration is purely discretionary. And we must assume that in following the established procedure (or normal order of call), the members of Local Board 44 have declined to exercise their discretionary authority absent specific action on their part.

### III.

### WAS THE DEFENDANT'S REFUSAL TO SUBMIT TO INDUCTION "WILLFULLY AND KNOWINGLY" MADE?

It is the defendant's position that as a result of his lack of knowledge of the requirements for conscientious objector classification and the procedures of the Selective Service System in general, his refusal to submit to induction was not

"willfully and knowingly" made. He maintains that he did not receive the May 17, 1966, notice of classification or any other response to his conscientious objector claim prior to receipt of the June 3, 1966, order to report for induction, and that upon receipt of the June 3, 1966, order he thought that refusing to submit to induction was but the "next step in the whole process." He further maintains that he did not "willfully and knowingly" refuse induction, but that he refused induction because he conscientiously objected to defending and perpetuating a political, social, and economic system which he considered racist and inhuman.

■ I am convinced that the defendant knew what he was doing when he refused to submit to induction and, further, that his refusal was "willfully and knowingly" made. The defendant's refusal was based not on mistake or innocence, but rather on an opposition to military service that is not legally recognized as a ground for conscientious objector classification and which he knew was not legally recognized.

## DEFENDANT'S SUBSEQUENT I-Y CLASSIFICATION

■ The defendant is presently classified I-Y (qualified for military service only in time of war or national emergency). He contends that this classification, which occurred subsequent to his refusal to submit to induction and his later indictment, cancelled his order to report for induction, and that therefore his continued and present refusal to report for induction does not violate § 462 of Title 50 App. of the United States Code. In support of his position, the defendant cites Selective Service Regulation 1625.14 which provides:

"§ 1625.14 Cancellation of Order to Report for Induction or for Civilian Work by reopening of classification.

"The reopening of the classification of a registrant by the local board shall cancel any Order To Report for Induction (SSS Form No. 252) or Order To Report for Civilian Work and Statement of Employer (SSS Form No. 153) which may have been issued to the registrant, except that if the registrant has failed to comply with either of those orders, the reopening of his classification thereafter by the local board for the purpose of placing him in Class IV-C or Class V-A shall not cancel the order with which he failed to comply." 32 C.F.R. § 1625.14 (1968).

It is my opinion, however, that the above-quoted regulation was not designed to cover the type of re-classification found in the instant case. As set forth in my findings of fact, the Government and this Court have undertaken great efforts to afford the defendant every conceivable opportunity to reconsider his decision not to submit to induction. As a result of one of these efforts, an arrangement was worked out for the defendant to submit to induction. Upon submission, however, the defendant was found morally unfit for service because he was serving a period of probation pursuant to a state felony conviction for possession of marijuana. (The possession of marijuana for which the defendant was convicted occurred subsequent to his refusal to submit for induction.) As a result of this finding, the Local Board proceeded to classify the defendant I-Y.

The only reason the defendant was found morally unfit for military service and classified I-Y was that he was on probation. It is also important to note that he was on probation for criminal conduct which occurred *subsequent to* his refusal to submit for induction, and that although an agreement has now been reached whereby the defendant is acceptable for military service, he still refuses to submit to induction. Under these circumstances, it is my opinion that Regulation 1625.14 is not applicable, and that the defendant's subsequent re-classification does not condone or in any way cancel the defendant's refusal to report for induction or the criminal

repercussions flowing therefrom. Marshall v. United States, 140 F.2d 261 (5th Cir. 1944).

The foregoing opinion sets forth this court's findings of fact and conclusions of law in accordance with Rule 23(c) of the Federal Rules of Criminal Procedure.

For all of the foregoing reasons, I am of the opinion that the defendant's motion for a judgment of acquittal should be denied and the defendant found guilty as charged.

It is therefore ordered that the defendant's motion for judgment of acquittal be and it hereby is denied, and that the defendant, Marc Anthony Lewis, be and he hereby is found and adjudged guilty of the offense as charged in the indictment.