UNITED STATES of America
v.
Thomas Frederick LEICHTFUSS.

UNITED STATES of America
v.
Linas MINTAUTAS.

UNITED STATES of America
v.
Michael John TARIO.
Nos. 71 CR 66, 71 CR 71, 71 CR 74.

United States District Court,
N. D. Illinois, E. D.
Aug. 9, 1971.

William J. Bauer, U. S. Atty., Theodore T. Scudder, Asst. U. S. Atty., for the United States.

Richard K. Means, Chicago, Ill., for defendants.

Federal Defender Program by Terence F. MacCarthy, Director and Thomas D. Decker, Chicago, Ill., with Joseph Beeler, Chicago, Ill., of counsel, amicus curiae.

## MEMORANDUM AND ORDER

CAMPBELL, Senior Judge.

The defendants in these cases have been indicted for violation of the Military Selective Service Act of 1967 ("The

Act").[1] These cases are not factually related, but are decided together because substantially identical pretrial motions have been presented in each case. These are but three of approximately 150 cases which have been assigned to me pursuant to a general order of this court referring to my calendar all cases involving a violation of the Selective Service laws. Pursuant to this general order it is my responsibility to accept the return of indictments brought under the Selective Service laws; to accept pleas of guilty and impose sentence where such a plea is entered; and, where a plea of not guilty is entered, to rule upon all pretrial motions and to generally supervise pretrial discovery. After the disposition of all pretrial motions each case is assigned by lot to the active judges of this court under the provisions of our General Rules relating to the assignment of cases. See Rule 10, General Rules, Northern District of Illinois.

The posture of the present motion is best understood by a brief explanation of the discovery practice in this district as established by our Local Rules of Criminal Procedure. Discovery is now initiated not by motion but by a simple request. Local Criminal Rule 2.04 provides that upon request by defendant's attorney the United States Attorney shall:

"(1) Permit defendant's attorney to inspect and copy or photograph any relevant written or recorded statements or confessions made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the government;

(2) Permit defendant's attorney to inspect and copy or photograph any relevant results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the case, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the government;

(3) Permit defendant's attorney to inspect and copy or photograph any relevant recorded testimony of the defendant before a grand jury;

(4) Permit defendant's attorney to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places which are the property of the defendant and which are within the possession, custody or control of the government;

(5) Permit defendant's attorney to inspect and copy or photograph the Federal Bureau of Investigation Identification Sheet indicating defendant's prior criminal record;

(6) Permit defendant's attorney to inspect, copy or photograph any evidence favorable to the defendant;"

The information required to be turned over under this Rule is, of course, routinely granted whenever requested by motion and it is the purpose of our Local Rule to relieve the court and counsel of the time consuming and pointless effort of obtaining this information by formal motion. As to matters not the subject of automatic discovery, the defendant must, within ten days of arraignment, request the information at a conference with the Assistant United States Attorney assigned to the case. At the conference the parties are required to attempt to satisfy any remaining requests for discovery "in a cooperative atmosphere without recourse to the Court." Local Rule 2.04(c). For further explanation of the background, purposes and mechanics of the Rule see, MacCarthy and Forde,

---

1. Defendant Leichtfuss (71 CR 66) is charged with failing to perform a duty required of him under the Selective Service Act (failing to keep the local board informed as to his current address) ; and failing to report for a physical examination 50 U.S.C. § 462. Defendants Mintautas (71 CR 71) and Taric (71 CR 74) are charged with refusing to submit to induction as ordered. 50 U.S.C. § 462.

"The New Local Criminal Rules for the Northern District of Illinois." 1 Loyola U. (of Chi.) L.J. 51, 67–73 (1970) ; Mac-Carthy and Forde, "Discovery In Criminal Cases Under the New Local Rules of the Federal Court" 52 Chi. Bar Rec. 41 (1970). I add only the comment that in my experience working with our new Rules, their proper application has substantially reduced the needless work previously related to pretrial discovery in criminal cases.

In the cases presently before me all of the information required by the Rule has been given to defense counsel and conferences have been held and further requests have been satisfied. Therefore, the motions I am confronted with relate only to such further discovery as the government has refused.

Upon the filing of these motions for additional discovery I ordered the filing of briefs in support and in opposition thereto and set the cause for oral argument. Thorough briefs relating to all issues raised in the motions were filed by counsel for these defendants and by the government. I also heard lengthy oral argument on the issues. Because it was anticipated by the government and the criminal bar of this district that the disposition of these motions would necessarily govern the disposition of similar motions to be filed in numerous other pending cases, I thought it necessary to make a rather complete analysis of these issues. To supplement my own research I appointed the Federal Defender Program of our court *Amicus Curiae* for the purpose of filing a brief relating to the issues presented in the pending motions. Pursuant to that order the Federal Defender Program, by its Director Terence F. MacCarthy, Thomas D. Decker and Joseph Beeler, filed a most comprehensive and scholarly brief, which together with its appendix runs well over 200 pages and thoroughly considers each issue presented in the motions before me. I extend my sincere thanks to the Defender Program and these counsel for their considerable efforts in this undertaking. The response of the government, while perhaps less voluminous, was equally enlightening.

Predictably, the *Amicus* has called for broad if not complete discovery in these cases. In this regard I should state that I generally share this view. I believe it most unfortunate that discovery in criminal cases has lagged so far behind the progressive developments we have experienced in civil discovery.[2] In civil cases I employ a simple two word order to resolve all discovery disputes:— "exchange files!" As the authors of the above cited Article appearing in the Chicago Bar Record have noted, I have recently been applying this same simple order in criminal cases and find its application equally productive. Based on my experience I submit that complete discovery in criminal cases results in fairer, more orderly trials and a substantial increase in the number of guilty pleas. With this experience in mind I take up consideration of the motions presented in these cases.

### Discovery Voluntarily Granted

In its brief, and in oral argument, the government has correctly stated that it has fully complied with all of the requirements for voluntary disclosure as required by Local Rule 2.04 and has even attempted to substantially comply with my much broader general order to "exchange files."

Specifically, in compliance with Rule 2.04(a) the government has provided or offered to provide each defendant with the following where available:

(1) Any written or recorded statement or confession made by a defend-

---

**2.** I enthusiastically note that the proposed changes in the Federal Rules of Criminal Procedure anticipate much broader use of depositions in criminal cases. See Rule 15, Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (April, 1971).

ant within the possession of the government. (These would generally be contained in the defendant's Selective Service file which is made available to him.)

(2) The results or reports of physical or mental examinations and scientific tests. (These consist of medical and security records.)

(3) Any recorded testimony of a defendant before a Grand Jury.

(4) Any books, papers, documents or tangible objects which are the property of a defendant.

(5) Any available arrest record of a defendant.

(6) Any evidence favorable to a defendant.

Commendably, the United States Attorney has also expressed his willingness to produce certain documents in all cases and others, "whenever defense counsel * * * shows the reasons from his file for the discovery requests." He urges, however, that this court should compel only minimum discovery, complimented by "guidelines" for solution of certain other limited specific issues, thus permitting the bulk of discovery questions to be resolved on an *ad hoc*, case-by-case basis. While there is certain merit to the suggested approach, I believe that, because of the many pending cases which will be decided in accordance with the resolution of the issues in these cases, sound judicial administration requires a ruling on all issues presented in these cases. In so doing, I now order discovery in all cases of all documents which the government has commendably offered to provide upon request. These consist in the main of all documents in the Selective Service file relating to the defendant and which are forwarded to the office of the United States Attorney by the Selective Service System. See also Appendix A of this opinion which sets forth a "Table of Forms Normally Provided to the Defense," an appendix to a brief of the United States Attorney herein.

## INFORMATION SOUGHT BY THESE DEFENDANTS

In addition to the above described documents contained in the registrant's Selective Service File and which have been disclosed, the defendants seek substantial additional discovery some of which may be described as "general discovery," that is, similar to that sought in any criminal case. The remainder of their requests seeks information possessed by the Selective Service System, but not contained in the file of a registrant.

## GENERAL DISCOVERY

Under the caption "General Discovery" are numerous requests which are common to most criminal cases and are not unique to Selective Service cases.

*Evidence Favorable to Accused.*

■■ The duty of the government to advise an accused of any evidence it may possess which may be favorable to the defendant's case and relates to the issues of guilt, innocence or punishment is expressed in the Supreme's Court landmark decision in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). While such evidence is here sought by motion, the obligation in *Brady* is not dependent upon a pretrial request for such evidence. Rather, *Brady* and subsequent decisions, notably Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), impose an affirmative duty upon the prosecutor to disclose favorable evidence regardless of whether such evidence has been formally requested by the defendant.

Ordinarily, in ruling on defendants' motions for such evidence it would suffice to merely cite our Local Criminal Rule 2.04 discussed above which requires disclosure of such evidence upon request. In fact, in the opening pages of its brief the government acknowledges the Rule and states that such evidence is "always produced," a representation I believe to be accurate.

The motions in these cases, however, go beyond the usual *Brady* request and seek production of "all reports, memoranda, documents and evidence relating to this case, including all § 3500 statements and Form 302 reports, if any * * *." In other words, relying on the *Brady* principle, defendants seek to review all evidence of any kind in the possession of the government to determine if any of that evidence is "favorable to their cause." The basis of their request is that defense counsel and not the government should determine what evidence is favorable to the defendant and that defense counsel can make such a determination only after reviewing *all* of the evidence. As an alternative proposition, the defendants urge that all of the government's evidence should be reviewed by the court *in camera* and the court will then make the determination as to what evidence may be favorable to the defendant.

In considering the proposed alternatives I find myself in agreement with the *Amicus* in concluding that both are "unacceptable," and that in final analysis the interests of all would best be served if we continue to rely on the judgment and integrity of the government to determine what, under *Brady*, it has a duty to disclose.[3]

*Grand Jury Testimony.*

The defendants seek an order requiring the government to produce for inspection by defendant and his attorney or in the alternative to submit to the court for *in camera* inspection, the recorded testimony of each witness who testified before the grand jury concerning the events alleged in the indictment. In support of this request the defendants state: (a) the grand jury testimony may prove helpful or even necessary for defendants to properly evaluate the evidence and present defenses; (b) the testimony may prove necessary to proper preparation for and cross-examination of trial witnesses who testified before the grand jury; and (c) there is no compelling necessity for secrecy.

Discovery and inspection of a defendant's own testimony before a grand jury is of course required by Rule 16(a)(3), Fed.R.Crim.P., and by our Local Criminal Rules. Rule 2.04. As to other grand jury witnesses, Rule 6(e), Fed.R.Crim. P., limits production to cases where there is "a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." There is no such showing here.

As pointed out by the *Amicus Curiae*, however, courts have granted discovery of grand jury testimony in numerous situations where "the ends of justice require it." See Dennis v. United States, 384 U.S. 855, 869–870, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). In its brief it correctly states: "Discovery of the testimony of witnesses who appeared before the grand jury has developed, not because of or in relation to Rule 6(e), but is rather the product of judicial decisions in the main ignoring the Rule." The *Dennis* case redefined what has developed to be a "particularized need" prerequisite to obtaining discovery of grand jury testimony and courts have ordered disclosure in a growing number of cases. *See* United States v. Amabile, 395 F.2d 47 (7th Cir. 1968), *vacated on other grounds sub nom.* Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22

---

3. Though concluding that the alternatives were "unacceptable" the *Amicus* suggests that there may be some question as to the ability of prosecutors to interpret *Brady*, citing the comments of John Newman, former United States Attorney for the District of Connecticut, repeated in "Discovery in Criminal Cases" 44 F.R.D. 481 (1967). Mr. Newman related a personal experience in addressing a large group of prosecutors. He presented an obvious *Brady* situation—the witness who viewed the defendant and says that "that is not the man." Mr. Newman states that only two prosecutors felt that this information need be disclosed. Mr. Newman concluded "that the obligation to disclose favorable evidence is not one fully appreciated by all prosecutors." 44 F.R.D. at 501.

L.Ed.2d 297 (1969); Allen v. United States, 129 U.S.App.D.C. 61, 390 F.2d 476 (D.C. Cir. 1968); National Dairy Products Corp. v. United States, 384 F.2d 457 (8th Cir. 1967); United States v. Youngblood, 379 F.2d 365 (2nd Cir. 1967).

■ In *Amabile*, our Seventh Circuit Court of Appeals held that defendants are entitled to the grand jury testimony of a government witness as to the subject matter about which he testified at trial, except where the government can show some reason for denial of such discovery. As the government points out, this places the production of grand jury testimony in the same status as § 3500 statements. And, while it has long been my practice to require pretrial disclosure of § 3500 statements, see United States v. Hilbrich, 232 F.Supp. 111, 119 (N.D. Ill.1964), *aff'd*, 341 F.2d 555 (7th Cir. 1965), this is not a standing practice among judges in this court. Furthermore, in Selective Service cases seldom does a witness who testified before the grand jury testify at trial so no useful purpose would be served by production before trial in these cases. I therefore decline to require pretrial disclosure at this time. After the cases are assigned for trial the judge to whom the case is assigned can determine whether disclosure should be made prior to trial or only after the witnesses have testified.

*Names and Addresses of Potential Witnesses.*

The defendants have requested an order requiring the government to disclose all names and addresses of potential witnesses upon whose testimony the government will rely at trial. In opposing this request, the government states that discovery of the names of witnesses is inappropriate in a criminal case, citing United States v. Chase, 372 F.2d 453 (4th Cir. 1967); United States v. Wolfson, 294 F.Supp. 267 (D.Del.1968); United States v. Lavery, 161 F.Supp. 283 (M.D.Pa.1958). The government also adds that it is "well known * * * that the witnesses in Selective Service

cases are always a clerk of the local board or some other Selective Service employee, and the F.B.I. agent who arrested the defendant."

■ It is clear that federal courts have the power to require the government to disclose the names of potential witnesses where this information is necessary or useful in the defendant's preparation for trial. See Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L. Ed.2d 305 (1967); see also United States v. White, 370 F.2d 559 (7th Cir. 1966). Certainly there is nothing "inappropriate" about ordering such a request in a criminal case. Some States specifically provide for the discovery of the names and addresses of witnesses. See Ill.Rev.Stat. ch. 38 § 114–9 (1969). Moreover the proposed amendment to the Federal Rules of Criminal Procedure, in my opinion, will soon require the government to disclose the names and addresses of all government witnesses. The proposed amendment to Rule 16 provides:

"(vi) *Government Witnesses.* Upon motion of the defendant the court may order the attorney for the government to furnish to the defendant a written list of the names and addresses of all government witnesses which the attorney for the government intends to call at the trial together with any record of prior felony convictions of any such witness which is within the knowledge of the attorney for the government. Names and addresses of government witnesses shall not be subject to disclosure if the attorney for the government certifies that to do so may subject the witness or others to physical or substantial economic harm or coercion. Where a motion for discovery of the names and addresses of witnesses has been made by a defendant, the government may move the court to perpetuate the testimony of such witnesses in a hearing before the court or a United States magistrate, in which hearing the defendant shall have the right of cross-examina-

tion. A record of the witness' testimony shall be made and shall be admissible at trial as part of the government's case in chief in the event the witness has become unavailable without the fault of the government or if the witness has changed his testimony." (48 F.R.D. at 589).

While the proposed amendment provides only that a court "may" order production of a list of witnesses, in my opinion the courts will continue to interpret the word "may" in Rule 16 as "shall". See United States v. Isa, 413 F.2d 244 (7th Cir. 1969); MacCarthy and Forde, 1 Loyola U. (Chi.) L.J. *supra*, at 69–70.

The American Bar Association Proposals on Minimum Standards for Criminal Justice also require a prosecutor to disclose the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with their relevant written or recorded statements. ABA Standards Relating to Discovery and Procedure Before Trial § 2.1(a) (i).

█ I see no justification for withholding the names and addresses of government witnesses in these cases. As the government itself points out the only witnesses in most cases will be a Selective Service clerk from the Local Board and perhaps the F.B.I. agent who arrested the defendant. Certainly there is no apparent threat that disclosure of the identity of these witnesses prior to trial will subject the witness to physical or economic harm or to threats designed to make him unavailable to testify or to influence him to change his testimony. If in any case the government has reason to believe that there is a danger of witness intimidation of any kind it may seek a "protective order" to restrict, defer or deny disclosure of the names of its witnesses. See rule 16(e) Fed.R. Crim.P. As to the availability and use of protective orders, I fully agree with the suggestion of the *Amicus* when it states: "Possibly the most significant contribution to the 1966 amendments to

rule 16 was the inclusion of subdivision (e) 'protective orders'. It is probably the least utilized subdivision of the rule as well." The obvious purpose of the amended Rule 16 was to expand discovery. Appreciating this fact, the advisory committee felt it necessary and appropriate to control possible abuses in connection with broad discovery by including the "protective order" provisions found in subdivision (e). However, the government seldom seeks the protection contemplated. The *Amicus* suggests the obvious reasons why "protective orders" are so seldom sought. Courts are either not liberally interpreting Rule 16 so as to occasion government requests to employ subdivision (e)—a conclusion supported by a reading of the ABA Standards, *supra,* or most cases do not justify a protective order predicated upon realistic fears of "a particular danger of perjury or witness intimidation, for protection of information vital to national security, and the protection of business enterprises from economic reprisals." Rule 16(e). It is my personal belief that the interests of justice will best be served when courts adopt a general policy of broad discovery in criminal cases except where the government seeks, with factual support, a protective order. Such a salutary development will in my opinion also substantially improve the administration of our court system.

In resisting disclosure of a list of its witnesses in these cases the government also argues that the disclosure of the identity of these witnesses (Local Board Clerk and F.B.I. agent) will be of little value to a defendant and that in many cases their identity is not known until just a few days before trial when it is determined which clerk will appear. There is merit to these arguments. But rather than refuse disclosure for these reasons, I believe the appropriate solution is to require disclosure a short time prior to trial. Accordingly, 30 days before trial the government is ordered to advise each defendant of the name and address of each witness who will be call-

ed to testify in support of the government's case.

Although not requested by the government, I suggest the propriety in these cases of requiring reciprocal discovery. Subparagraph (c) of Rule 16 specifically authorizes discovery by the government if the court grants defendant's motions for discovery under Rule 16(a) and (b), and the court may so condition its order of discovery. The discovery authorized in paragraph (c) is very appropriate in these cases. The Rule provides that the court may condition its discovery order by requiring that the defendant permit the government to inspect and copy or photograph scientific or medical reports, books, papers, documents, and tangible objects which the defendant intends to produce at trial and which are within his possession, custody or control. For the same reasons I have very liberally applied the discovery provisions to grant defendants a list of government witnesses, I condition such discovery upon the defendants providing the government with their lists of witnesses. Under no circumstances, however, will a defendant be required to disclose for inspection any "report, memoranda or other internal defense documents made by the defendant, or his attorneys or agents in connection with the investigation or defense of the case, or of statements made by the defendant or by the government or defense witness, or by prospective government or defense witnesses, to the defendant, his agents or attorneys." These materials are protected from disclosure by the specific provisions of Rule 16(c) and any order requiring their disclosure would of course have substantial constitutional implications.

This District has achieved remarkable success in attempts to improve judicial administration in the civil practice. It is generally recognized that during the last ten years while courts in every metropolitan area in the country were plagued with docket delay, we managed to maintain our position of current status. One of the innovations which has contributed to this position is our requirement by general order that all parties in every civil case file prior to trial, a final pretrial order which eliminates many of the non-essential and uncontested issues from litigation and also facilitates and greatly expedites routine court procedures such as the marking of documents and the proof of the authenticity of documents. Furthermore, it requires lawyers objectively to assess the merit and strength of their case and the possible advisability of settlement. I believe similar procedures must now, in so far as constitutionally possible, be applied in criminal cases, particularly if, as I urge above, the courts begin to authorize broad discovery to both sides of criminal cases in the same manner as in civil cases.

Accordingly, and upon the assumption that the government will accept the court's invitation to present a motion for reciprocal discovery, I hereby order that in all Selective Service cases counsel for the government and for the defendant shall submit to the court at least thirty days before trial, the following:

A. A written stipulation or statement of any uncontested facts.

B. Schedules of all exhibits which will be offered in evidence at the trial, except those defendant exhibits which have been excluded from this order. This schedule shall also contain an indication of those exhibits agreed to be admissible and the grounds for objecting to any others. Only exhibits so listed shall be offered in evidence at the trial except for good cause shown. All exhibits shall be properly marked and ready for introduction into evidence without delay.

C. The names and addresses of all prospective witnesses. The qualifications of any expert witnesses shall be stipulated.

I believe that strict adherence to this order will greatly facilitate the preparation and trial of these many Selective

Service cases and reduce the time required for trial. In many of the cases the entire file and its introduction into evidence is stipulated. In those cases where it is not, the government has a right to know prior to trial what defenses it will be forced to meet.

### Statements of Persons Who Will Not Appear As Witnesses.

The defendants have requested an order requiring the government to disclose all statements of persons with information relative to the defendant or the facts alleged in the indictment who will not testify, or persons the government does not propose to call as witnesses.

■ It is clear from the response of the government, however, that generally no such statements exist in Selective Service cases. While this general representation may end the matter in most cases, there exists the possibility that in a few of the many cases to which this order is applicable, such statements do exist. Where the government has such statements, any which contains evidence favorable to the accused must be produced under the mandate of Brady v. Maryland. Any other statements should be produced by virtue of my directive to exchange files. I therefore order production of any statements of witnesses in the possession of the government, where the government is reasonably certain they will not be called to testify at trial.

### Prosecutors' Notes.

The defendants also seek disclosure and inspection of "all notes or other forms of recordation, if any, of any attorney for the government taken at the time of or in any way related to their interview of witnesses or potential witnesses."

Prosecutors' notes, as described in defendants' motion, may be subject to disclosure at trial under the Jencks Act (18 U.S.C. § 3500) if they are statements of government witnesses within the meaning of the Act. See United States v. Hilbrich, 232 F.Supp. 111 (N.D.

Ill. 1964) aff'd, 341 F.2d 555 (7th Cir. 1965). Such notes must also be produced if they contain evidence favorable to the accused within the meaning of Brady v. Maryland.

[8] If such notes exist, and if they constitute "statements of government witnesses" within the meaning of the Jencks Act, they are produceable at trial. If said notes constitute evidence favorable to the accused within the meaning of Brady, the government is obligated to produce such evidence now. In all other respects the motion is denied.

### Names of Government Informers, Agents and Employees Who Have Knowledge of Defendant or the Facts of this Case.

Similar to the above motions, the defendants have requested disclosure of all names of "government informers, agents, employees or special employees who in any way have knowledge of defendant or the facts alleged in the indictment."

This motion appears to go well beyond my broad orders already entered in these cases as stated above. Accordingly, to the extent that this motion seeks discovery beyond that which has already been granted, it is denied, except, of course, if any informer, agent, employee or special employee has knowledge of the defendant or the facts of this occurrence which are favorable to the accused, such facts must be brought to the attention of the defendant under the teachings of Brady v. Maryland.

### The Criminal Records of the Defendant and Government Witnesses.

The defendants have requested an order for the government to disclose all of the criminal records, if any, of (a) the defendants; and (b) all government witnesses.

■ As observed above the defendant's prior criminal record is always available to a defendant upon simple request under Local Rule 2.04. See specifically subparagraph (a)(5). This Local Rule, which permits defense counsel discovery of his own client's criminal record, is intended to assist counsel in

obtaining more accurate information on the subject without relying exclusively on the defendant's memory. See Mac-Carthy and Forde, 1 Loyola (Chi.) L.J., *supra* at 70; "Proposed Amendment to Rule 16," 48 F.R.D. at 588.

As to the criminal record of government witnesses, such information may well be evidence "favorable to the accused" within the meaning of those terms as expressed in Brady v. Maryland. *See* Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967). The impeachment value of a prior criminal record is fully appreciated by the prosecution and its use should be available to both sides of a criminal trial.

In opposing the motion, the government appropriately relies on the Eighth Circuit's opinion in Hemphill v. United States, 392 F.2d 45 (1968), which held that it was not an abuse of discretion to refuse the defendant's request for pretrial discovery of the criminal record of the government's witnesses. But that case does not dispose of the issue. First, I do not believe that the *Hemphill* case holds that it would be an abuse of my discretion to order the production of such criminal records. More important in my view, the rationale of the court in *Hemphill* is out of step with current thinking on pretrial discovery in criminal cases and with the teachings of the Supreme Court in Brady v. Maryland.

In criminal cases before me I have routinely ordered the production of the criminal record of all government witnesses. I have no reluctance to do so in these cases (although I do doubt the application of this motion in these cases where the only government witnesses will be Selective Service Board clerks and F.B.I. agents).

■ The motion for the production of the criminal records of all defendants and all government witnesses is hereby granted.

Because the government may not know at this time who its witnesses will be, this information need not be furnished until thirty days prior to trial.

*Electronic Eavesdropping.*

The defendants have requested the government to state whether any electronic eavesdropping has been conducted by any federal or local governmental agency upon the defendant and/or his attorney.

In response to this request by the defendants, the government states, "As far as *this office* knows, there has not been any electronic eavesdropping conducted with respect to any present defendant, or with respect to any individual reported to this office for allegedly violating the Military Selective Service Act." (Emphasis added.)

Admittedly, it is an unusual case where a defendant in a Selective Service prosecution has been the subject of eavesdropping. If he has been such a subject, however, he is entitled to know about it so that he may determine whether his prosecution might be "tainted". *See* Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). And, the "lack of knowledge" of the office of the United States Attorney does not remove the taint.

■ Accordingly, the government is ordered to inquire of the various federal investigative agencies as to whether any of these defendants were the subject of electronic eavesdropping. This order extends to conversations of defendants' counsel if the overheard conversations were with a defendant or related to his case. If such inquiry should reveal that any defendant was the subject of such eavesdropping, he shall be so advised before trial. At that time the court will determine the legal issues as to the "legality" of the electronic surveillance and the defendant's standing to challenge that legality. *See* United States v. Hoffa, 436 F.2d 1243 (7th Cir. 1970).

*Press Releases and Photographs Issued by the Government.*

The defendants also seek disclosure of all copies and the distribution lists of any news or press releases or photographs prepared by any agency of the

government relating to the defendant or the matters alleged in the indictment.

 I presume that this request is based on the possibility that the government may have caused the release of prejudicial publicity which may affect a defendant's case. I would agree that a defendant in an appropriate case—where the issue of prejudicial publicity exists—would be entitled to such discovery and information. There is no representation, nor do I think there can be, that such a case is presently before the court. Accordingly, the request is denied.

*Preservation of Evidence.*

 In what they describe as a "motion for the preservation of evidence" defendants assert that an order is necessary to preserve evidence which may at some future stage of the proceeding be helpful to a proper resolution of the case. In their argument in support of these motions, the defendants imply that unless restrained from doing so, the government is inclined in some instances to destroy or conceal or alter certain evidence.

Other than to state that my experience with the office of the United States Attorney in this district and with the other government agencies refutes such baseless implications, I find it unnecessary to comment at length on the motion. In any event, I see nothing that could be accomplished by such an order that would not be accomplished as effectively if and when any such destruction or alteration should occur.

*Bill of Particulars.*

Finally, the defendants also seek a written bill of particulars in which the government is asked to state:

1. The specific section and subsections of the Military Selective Service Act and the Rules and Regulations promulgated thereunder and the specific directives made pursuant thereto which the defendants are alleged to have violated.

2. The precise time of day the defendants are alleged to have failed or refused to submit to induction as ordered.

3. The precise place (by street address and room number) where defendants allegedly did neglect, fail and refuse to submit to induction as ordered; and

4. The name, precise residence address and official address, position or title and military rank of the person who allegedly ordered the defendants to submit to the induction.

 The granting or denying of a request for a bill of particulars is left largely to the discretion of the trial court. This point was rather emphatically reiterated by the Supreme Court in Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). In that case Judge Hubert L. Will of this court ordered the government to provide a defendant in a criminal tax evasion prosecution with certain information sought by a request for a bill of particulars. The government refused to comply with his order for a bill of particulars and sought and obtained a Writ of Mandamus from the Court of Appeals directing Judge Will to "vacate his order directing the Government to answer" the defendant's motion for bill of particulars. The Supreme Court granted *certiorari* (386 U.S. 955, 87 S.Ct. 1022, 18 L.Ed.2d 102), vacated the writ and remanded the case. In its opinion the Supreme Court expressed certain thoughts relevant here:

"We do not understand the Government to argue that petitioner was in any sense without 'jurisdiction' to order it to file a bill of particulars. Suffice it to note that Rule 7(f) of the Federal Rules of Criminal Procedure specifically empowers the trial court to 'direct the filing of a bill of particulars', and that federal trial courts have always had very broad discretion in ruling upon requests for such bills, compare Wong Tai v. United States,

273 U.S. 77, 82 [47 S.Ct. 300, 302, 71 L.Ed. 545] (1927)." (389 U.S. at 98–99, 88 S.Ct. at 275).

Significantly in a footnote in that opinion the Court also noted that Rule 7(f) was amended, effective July 1, 1966, to eliminate the requirement that a defendant seeking a bill of particulars make a showing of "cause". As stated in the Advisory Committee Note, this amendment was intended to "eliminate the requirements of a showing of cause * * * to encourage a more liberal attitude by the courts towards bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." Advisory Committee Note, 39 F.R.D. 69, 170 (1966); see United States v. Tanner, 279 F.Supp. 457, 474 (N.D.Ill. 1967).

■ As the Amicus Curiae points out, it is rather ironic that the government generally opposes a motion for a bill of particulars, because Rule 7(f), authorizing bills of particulars, was enacted not to aid defendants but to relieve prosecutors of the onerous task of preparing the hyper-technical indictments required under common law. With the simplification of criminal pleading it was contemplated that defendants would receive the essential information upon which a charge is based by the means of a bill of particulars. Yet while indictments and criminal complaints have been simplified to a point that they merely restate the prohibition set forth in the statute, bills of particulars are seldom granted to defendants required to defend the simplified charges. As stated above, by requiring the government to provide the information sought by bill of particulars, i.e., the time, place and essential circumstances of the offense charged, the defendant will be in a better position to meet these charges. In many cases, seeing the substance of the government's case, pleas of guilty are promoted. All of these factors contribute to my determination that these motions for bills of particulars should be granted.

Accordingly, the motions of the defendants for bills of particulars are granted. The information sought may be provided by the government in a written answer to the motion or in a further informal conference held pursuant to Local Rule 2.04.

## DISCOVERY OF ADMINISTRATIVE PROCEDURE

The defendants have requested discovery of a number of Selective Service System directives, policy statements, manuals, forms and advisory memos pertaining to the classification and processing of registrants. Much of this information is generally unpublished. The requests include:

1. All documents detailing general policies of defendants' Local and Appeal Boards on such matters as the rights of registrants to appear, to present witnesses, to have an attorney present and to record the proceedings.

2. The Selective Service Form Manual or a copy of all Selective Service Forms which are not published in the Federal Register or by the Government Printing Office.

3. Each Illinois State Selective Service System special form adopted pursuant to Selective Service System Regulation 1606.52 (32 C.F.R. § 1606.52), along with the National Director's approval of the use of each form;

4. Any compilation of documents used as a Manual for Government Appeals Agents, issued by either the Illinois or National Selective Service System.

5. All memoranda issued to Government Appeals Agents by the Illinois or National Selective Service System.

6. All official policy statements or directives of the Director of Selective Service pertaining to the classification or processing of registrants.

7. All memoranda, bulletins, advices, letters, manuals, etc., issued by the Illinois State Director to Local Boards.

As is well known and particularly clear from the description of the information requested herein, the Selective Service System is a complex bit of legal machinery, a "mind—numbing maze of statutes, regulations and memoranda * * * which are inscrutable not only to laymen but also to most lawyers." United States *ex rel.* Vaccarino v. Officer of the Day, 305 F.Supp. 732, 735, 736 (S.D.N.Y.1969). This complex machinery is governed by some 45 pages of statute, 300 pages of regulations and about 85 pages of local board memoranda and other advisory memoranda. There are also other information bulletins and other materials issued by National Headquarters. The machinery is further complicated by guidelines issued by the various State Directors.

 There are a number of sound reasons which support discovery of the above described regulatory materials. These manuals, directives, rules and bulletins may well contain mistaken interpretations of substantive or procedural laws which may void or taint the classification or processing of a registrant. They should therefore be available for inspection by a defendant and his counsel. Furthermore, rules and policies established by an Administrative Agency are binding on the agency and must be followed by them. *E. g.*, United States *ex rel.* Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); United States v. Heffner, 420 F.2d 809 (4th Cir. 1970). This principle applies to the Selective Service System. Olvera v. United States, 223 F.2d 880, 882 (5th Cir. 1955). Obviously a registrant cannot determine if the Selective Service System followed its own rules and policies in processing his induction unless he has an opportunity to know what those rules and policies are.

There are still further reasons which support discovery of these materials.

Examination may disclose that certain rules are not authorized by statute or regulation, Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970), or exceed authority delegated to the Service, *cf.* Peters v. Hobby, 349 U.S. 331, 75 S.Ct. 790, 99 L.Ed. 1129 (1955), or exceed the authority of the State agency issuing them. *Ex parte* Asit Ranjan Ghosh, 58 F.Supp. 851, 857 (S.D.Calif.1944). Discovery of these directives may also disclose a discriminatory application of the rules as to certain registrants.

 Finally, it would appear that disclosure of the directives and other material issued by the Selective Service System is required by the Freedom of Information Act, 5 U.S.C. § 552. The general provisions of the Act are applicable to the Selective Service System. *See* Tuchinsky v. Selective Service System, 418 F.2d 155 (7th Cir. 1969). Any interpretation by way of memorandum or directive of the regulations is subject to disclosure under the Freedom of Information Act as "statements of general policy." 5 U.S.C. § 552(a)(1) (D).

 The Selective Service Form Manual, which contains forms specified for use by the system along with accompanying directives, is also producible under the Act. These forms are made a part of the regulations but are not published in the Federal Register. Local and Appeal Board personnel routinely refer to the Form Manual and directives in determining the rights of registrants. As stated in the legislative history of the Act:

"In addition to the orders and opinions required to be made public by the present law * * * (the new Freedom of Information Act) would require agencies to make available statements of policy, interpretations, staff manuals, and instructions that affect any member of the public. This material is the end product of Federal administration." (1966 U.S.Code Cong. & Adm.News 2424).

In its response to the brief of the *Amicus Curiae* the government advises that copies of the Form Manual are now available in the office of the United States Attorney for inspection and use by defense counsel. The government also advises that Selective Service Regulations and Local Board Memoranda are available from the Government Printing Office and are printed in the Selective Service Law Reporter, and that "Operations Bulletins" may be inspected at the offices of the Local Board, State Headquarters and National Headquarters. As to certain other unpublished directives, policy statements and the like, the government contends that this information should not be ordered disclosed until an interested defendant has first requested the material from the Director of Selective Service and otherwise exhausted his administrative remedies.

■ Upon consideration of all of the arguments presented by all parties it appears clear to me that a defendant in a criminal Selective Service case has a right to inspect and review all Selective Service administrative rules and similar materials, any number of which may have illegally affected his classification or processing. It also seems appropriate that the exercise of this right should not be delayed or circumvented by requiring the accused to first seek discovery by administrative petition. Requiring a defendant to "exhaust his administrative remedies" while he is already engaged in the defense of criminal charges brought by the government would be senseless and would serve only to delay the criminal proceedings. On the other hand, it is certainly not necessary to impose upon the government the burden of disclosure in every case. Rather, I suggest that the desired information, all of which is of a general nature, be made available in a convenient location to any defense counsel desiring to review it. To comply with this order the government need only establish and maintain a library of the requested documents and information at a convenient location, *e. g.*, the office of the United States Attorney, the library of this courthouse, or the Selective Service Office most conveniently located near this courthouse. Said library shall contain the following materials—unless the same are otherwise published and generally available.

(a) Memos to All State Directors, Letters to All State Directors, Letters to All State Directors and Regional Service Centers, Administrative Bulletins, State Director Advices, Memoranda to Government Appeal Agents, News Releases, Inspection Services Newsletters, and any other directives and policy statements, advisory memos or manuals of the Selective Service System National Headquarters pertaining to the classification or processing of registrants.

(b) State Memoranda, Special Memos, Clerical Procedures, Special Forms adopted pursuant to Selective Service System Regulation 1606.52, and any other directives, policy statements, advisory memos and manuals pertaining to the classification and processing of registrants in *Illinois*.

(c) Reference Manual Releases, Memos to All Local Boards, Special Forms adopted pursuant to Selective Service System Regulation 1606.52, and any other directives, policy statements, advisory memos or manuals pertaining to the classification or processing of registrants in Indiana.[4]

(d) Copies of any local and appeal board authorizations and resolutions or other recorded policy statements, advisory memos or manuals pertaining to the classifications or processing of registrants by the board.

(e) Policy guidelines for the use of medical personnel in processing

4. Materials relating to procedures in Indiana may be required because certain Indiana registrants are ordered to report for induction in Chicago and failure to submit to induction here results in their prosecution in this District.

medical claims and reaching medical decisions, including any unpublished medical standards for testing and/or profiling, issued by the Surgeon General, Department of the Army, or the U. S. Army Recruiting Command.

## ADMINISTRATIVE PROCEDURE APPLIED TO INDIVIDUAL DEFENDANTS.

At oral argument and in its brief the government advised that it had turned over to each defendant all of the information contained in his Selective Service file, that is, all the information the Selective Service System has given to the office of the United States Attorney relating to each registrant. The defendants acknowledge this fact but also request a number of documents and other information relating to their cases and not contained in their individual files. These requests generally relate to the procedures which were followed in the processing of each defendant's registration.

The information sought falls into two separate categories: (a) Documents and records of the Local and Appeal Boards which may relate to the processing of a registrant's file; and (b) information relating to Local and Appeal Board members and other personnel.

*Documents and Records of Local and Appeal Boards.*

The many requests under this category may be summarized as follows:

1. All documents relating to the processing and classification of each defendant's case, *i.e.*, all documents bearing his name or Selective Service number, not already included in his file as produced by the government.

2. A statement of the number of registrants whose files were considered by a defendant's Local or Appeal Board on any occasion when the defendant's classification or processing was considered or acted upon. Relating to this request, the government is also asked to specify the time each meeting was commenced and adjourned, and the number, if any, of personal appearances allowed and time consumed on each appearance.

3. The minutes of all meetings of each defendant's Local and Appeal Boards at which his status was considered.

4. Any summary, prepared by the Selective Service System, presented to or considered by the Appeal Board which classified the defendant.

5. The docket book (Form No. 121) of the Appeal Board which classified each defendant.

6. The Register of Conscientious Objectors kept by each defendant's Local Board (See 32 CFR § 1623.-8).

7. Any written authorization or designation of a defendant's Local Board which purports to authorize its clerk to sign and issue notices to report for physical examination and induction and to sign notices of classification.

8. All communications and/or instructions from any State Director and the National Director of Selective Service and/or the Department of Justice to each defendant's Local Board concerning general advice or instructions as to the processing of each defendant.

In its response to these requests the government has listed many of the documents sought and summarized the contents and general availability of each. It also offers to produce much of the information requested upon a showing of "good cause." The government has also advised the court that certain information would be difficult to produce or photocopy for the defense, but is available for inspection at the Local and Appeal Boards. For example, I am advised that Selective Service Form 102 con-

sists of a comprehensive public record of *all actions* taken by Local and Appeal Boards with respect to the registration, classification and induction of *all persons* registered at the particular Local Board. It consists of multiple sheets listing the registrants, in birth date order. "Owing to its size, composition, and the different colors of ink used in making various entries, it is difficult if not impossible to duplicate accurately."

■ While I am aware of some of the problems which full disclosure may involve, I nevertheless believe that a registrant facing criminal charges is entitled to inspect all documents relating to his classification and processing. Such broad discovery is made necessary by the very nature of a Selective Service prosecution.

■ In a Selective Service trial the government relies almost exclusively on documentary evidence to prove its case. Such proof is generally sufficient to support a conviction because of the federal business records act, 28 U.S.C. § 1732, and because of the presumption of regularity of administrative proceedings. *See generally* Keene v. United States, 266 F.2d 378 (10th Cir. 1959). The government's prima facie case is customarily established by the testimony of one witness, a clerk from defendant's Local Board, and the introduction into evidence of the defendant's Selective Service file. In sum, the file (along with the defendant's registration card) establishes all of the elements of the offense: that he was duly classified; ordered to report; and that he refused to so report. (Identity of the defendant as the registrant is generally stipulated).

The burden then shifts to the defendant, who must rebut the presumption of regularity. As well summarized by the *Amicus:* "The problem of the defense thus may be generalized as the task of showing irregularity or illegality in an administrative proceeding the record of which reposes in the nearly exclusive custody, control and possession of the administrative agency."

Irregularity may be shown from the file itself, introduced in the government's case in chief or by going outside the government's evidence which consists only of his file to rebut the otherwise fatal presumption of validity. The need for additional discovery is thus summarized by the *Amicus:*

"Indeed, the most valid defenses, vital to rebut the presumption of regularity, may well be found outside his Selective Service file, but in the custody of the government in the very documents and materials the defendant desires to—and must—discover."

Selective Service cases are thus unique in that the need for discovery is even more compelling than in most other criminal cases. This compelling need outweighs any administrative inconvenience this discovery may cause the government. I am also of the opinion, however, that the discovery I here order can be implemented with little burden on the government by merely requiring that any such discovery sought be made available at defendant's Local or Appeal Board.[5] Information maintained at State or National Headquarters can be readily forwarded to the Local Board or to the office of the United States Attorney.

■ It is therefore ordered that all documents relating to the classification or processing of a defendant be made available for inspection at the office of the United States Attorney or at his Local or Appeal Board office.

If defendant's Local or Appeal Board is not located within this district, then said information shall be obtained by the United States Attorney and made available to defendant in this district.

5. Requiring inspection at a Local Board office would impose only a very slight burden on the Local Board for, as the *Amicus* points out, even with the recent increase in indictments, nationally there will still be fewer than one indictment per Local Board this year.

I think it appropriate to stress that I have fashioned the relief in the manner just described for the convenience of the United States Attorney and the Selective Service System and expect their full cooperation in executing this relief. Unfortunately there have been cases before this court where the Selective Service System has not cooperated with discovery orders, but has required counsel to wait for hours before being permitted to review voluminous records without the assistance of Board personnel. Such lack of cooperation by the Selective Service System in these cases I here warn could well result in a dismissal of the prosecution.

As to the defendants' request for copies of the minutes of their Local and Appeal Boards, I first observe that local boards are required by regulation to keep such minutes. 32 C.F.R. § 1604.-58 (1971). Copies of the minutes of local board meetings (SSS Form 112) are not contained in the file of an individual registrant, but are maintained at the Local Board office.[6] The minutes of the Local Board meeting reveal the duration of the meeting, the names of Board members and others in attendance, the powers delegated to the executive secretary, the reasons supporting some of its decisions as well as other information relating to the registrants considered. Obviously the minutes may contain evidence that the Board failed to comply with basic requirements or misunderstood the law or the facts of a particular claim. *See* United States v. Thomas, 3 SSLR 3306 (N.D.Ill.1970). *See also* Paszel v. Laird, 426 F.2d 1169, 1175 n.10 (2d Cir. 1970); United States v. Condon, 70 CR 539 (N.D. Ill. 1971); United States v. Branigan, 299 F.Supp. 225, 238 (S.D.N.Y.1969).

The government has advised the court that minutes of Local Board meetings are provided for the defense in many cases, but it urges that such production be limited to cases where there is a showing of "materiality." In my opinion materiality is established by virtue of the burden on the defendant to rebut the otherwise fatal presumption of regularity.

Information relating to the processing of other registrants at the time each defendant's status was considered and also such information as the time each meeting commenced and adjourned, will be available in the minutes of the meetings of the Local and Appeal Boards. Those minutes should also disclose whether personal appearances were permitted.

Accordingly, I believe the defendants are entitled to the minutes of all meetings of the Local Board in which the defendant's classification or processing was considered.

State Appeal Boards are likewise required to keep minutes of their meetings. 32 C.F.R. § 1604.27 (1971). These minutes may also contain evidence of misunderstandings of law or fact or failure to follow regulations in the processing of a registrant. See Nevarez Bengoechea v. Micheli, 295 F.Supp. 257, 258 (D.P.R.1969).

It would also appear as a general proposition that prior to an Appeal Board deciding a registrant's appeal he should be entitled to inspect any summary or resume submitted to the Appeal Board by Selective Service personnel. Under such a procedure a defendant could correct any error of law or misstatement of fact contained in the résumé. *See* United States v. Fisher,

---

6. The minutes required to be kept by regulation are those designated on Selective Service System Form 112. These minutes are not to be confused with a docket sheet kept at the back of each registrant's Classification Questionnaire (SSS Form 100) and captioned "Minutes of Action By Local Board and Appeal Board and On Appeal to the President." Nor are these minutes to be confused with the "Minutes of Local Board Meeting Continuation Sheet" (SSS Form 112–A) which is merely a list of all those registrants whose classifications were determined.

442 F.2d 109 (7th Cir. 1971); United States v. Manke, 259 F.2d 518 (4th Cir. 1958); United States v. Bova, 300 F. Supp. 936 (E.D.Wis.1969); *see also* Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955); and Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955). More importantly, a defendant is entitled to a judgment of acquittal if he can establish that the Appeal Board relied on a file summary rather than the full *de novo* review which is required by regulation. See United States v. Wallen, 315 F.Supp. 459 (D.Minn.1970). Under such circumstances the existence of a resume or summary itself may be evidence favorable to the accused within the meaning of Brady v. Maryland, *supra*. Accordingly, the motion for production of any summary or resume presented to or considered by an Appeal Board or panel thereof is granted.

■ The Docket Book of the Appeal Board (SSS Form 121) is a ledger-like record prepared by the Appeal Board concerning all registrants within its jurisdiction. The government resists its disclosure only because "the same information, with respect to each registrant, is contained in his Selective Service file." While this generally may be so, I believe a defendant should be permitted to inspect the source document, *i. e.*, the Appeals Board docket book, if for no other reason than to assure the accuracy of his personal file. Inspection of the docket book may also be necessary to establish patterns and to otherwise show what has happened to other registrants whose appeals may have been heard by the same Board.

■ The Register of Conscientious Objectors is undoubtedly a public record available for inspection at the defendant's Local Board. See 50 U.S.C. App. § 456(h)(2).

■ Local Board authorization permitting a clerk to issue notices to report for physical examination and induction and to sign notices of classification is material, because lack of proper authorization may disclose a violation of regulations.

■ All relevant communications or instructions from the State Director, National Director and Department of Justice will be disclosed pursuant to other orders entered herein.

For the reasons stated, it is ordered that upon request by defense counsel, the Docket Book; the Register of Conscientious Objectors kept by each defendant's Local Board; and the written authorizations of the Local Board permitting a clerk to issue notices to report for physical examination and induction and to sign notices of classification, shall be made available for inspection at the Local and Appeal Board offices.

Again, if a defendant's Local or Appeal Board is not located within this district, the United States Attorney shall make this information conveniently available to the defendant within this district.

*Information Relating to Board Members and Selective Service Personnel.*

The defendants seek extensive information about the makeup of Local and Appeal Boards and other Selective Service personnel. Specifically the government is asked to state, presumably in the form of a bill of particulars:

1. The names and addresses of each member of the Local and Appeal Boards that classified or otherwise considered a defendant's case.

2. The military position or affiliation, if any, the race, religion, date of appointment and criminal record, if any, of each member of the local and appeal board.

3. The geographical boundaries of the Local and Appeal Boards.

4. The name, business address and residence address and criminal record, if any, of each legal advisor, government appeal agent, medical advisor, clerk and secretarial staff member of the Local and Appeal Board at any time defendant's case was considered.

The requested documents include Selective Service Forms No. 401 (Personal History Statement), No. 402 (Personnel Action-Uncompensated Personnel), No. 405 (Recommendation for Uncompensated Personnel Action) and No. 461 (Uncompensated Personnel Control Card).

5. The Selective Service System records indicating, during the relevant time period from February 1, 1965 to date, every residence address and every date of appointment to and termination of Board membership of each person residing within the geographical area of defendant's Local Board who served as a member of any other Selective Service Local or Appeal Board during the period of his residence within the area. Again the requested documents are to include Selective Service System Forms No. 401, 402, 405 and 461.

6. If the membership of defendant's Local Board is divided into panels, all documents giving the composition of the panel to which defendant's case was assigned on each occasion when it was considered.

(a). *Information relating to Board members.*

By law Local Board members must be citizens of the United States, of civilian status, of at least 30 years of age, but not more than 75 years, and reside in the county or political subdivision in which the Local Board has jurisdiction. And, where a Local Board is comprised of more than one county or corresponding political subdivision, there shall be at least one member from each county included within the Local Board area. 50 U.S.C. App. § 460(b)(3); 32 C.F.R. § 1604.52 (1971). The same statutes and regulations provide that no one may be barred from membership on account of sex and that no member shall serve on any Local Board for more than twenty-five years.

The same basic qualifications are required for Appeal Board members except that the area residence requirement for an Appeal Board member applies to the area in which the Appeal Board is appointed and there are certain occupational requirements. Specifically, there must be a member from labor, one from industry, a physician, a lawyer and, where applicable, a member from agriculture. 32 C.F.R. § 1604.22 (1971).

The residence requirements for Local Board members have two aspects. A regulation in effect until 1970, 32 C.F.R. § 1604.52(c) (1970), provided that all members "shall if at all practicable be residents of the area in which their Local Board has jurisdiction." This language was deleted from the regulation in September of 1970, Executive Order No. 11555, 35 Fed.Reg. No. 175, at 14191, but was in effect when the files of these defendants were processed. The Selective Service Act requires that Local Board members be residents of the *county* in which the Local Board has jurisdiction. 50 U.S.C. App. § 460(b) (3); 32 C.F.R. § 1604.52(c) (1971).

In United States v. Krueger, 319 F. Supp. 225 (N.D.Ill.1970), Chief Judge Robson of this Court held that personal data regarding Selective Service Board members was not material since their qualifications could not be attacked collaterally as a defense to a criminal prosecution.

Judge Robson's thorough opinion in *Krueger* adequately disposes of all of the issues presented in defendants' motions. A brief quotation from that opinion illustrates its merit and application to the arguments in this case.

"Unpopularity of compulsory draft laws, particularly among those most vitally affected, does not justify a cavalier attitude by the court in disregarding fundamental legal principles so that such laws may be subjected to attacks without legal precedent or foundation. The qualifications of selective service board members, as well as the qualifications of

members of any other governmental body or officer, cannot be collaterally attacked as a defense to a criminal prosecution. It necessarily follows that the personal information sought by the defendant is neither relevant nor material to the preparation of his defense, and is therefore not a proper subject for discovery. Rule 16(b), Federal Rules of Criminal Procedure."

*See also* Czepil v. Hershey, 425 F.2d 251 (7th Cir. 1971).

■ The request for personal information relating to the qualifications of Local and Appeal Board members is therefore denied.

(b). *Information relating to Selective Service personnel other than those who are Board members.*

■ The defendants as set forth above have also submitted a broad claim for information relating to other Board personnel. I presume much of this information is sought with the intention of interviewing these employees of the Selective Service System and perhaps subpoenaing them as trial witnesses. As with many of the requests, there is little attempt to justify the disclosures in the brief of the defendants. Nevertheless it would seem elementary that a de-

fendant has the right to contact or call as a witness any person whom he believes may be helpful to his defense. Accordingly, on request the Selective System shall provide defense counsel with the name of any legal advisor, government appeal agent, medical advisor, clerk and secretarial staff member of a defendant's Local or Appeal Board who at any time considered the defendant's case. I see no materiality to the "criminal record" of these employees except of course if the employee is intended to be a government witness as discussed above. Nor do I see any relevance to the defendants' request for permission to browse through the various personnel records of these persons. These requests are therefore denied. Except as specifically granted above, all other requests relating to Selective Service personnel are denied.

## ORDER AND METHOD OF CALL

The defendants have submitted requests for information aimed at determining whether the Selective Service System properly followed its regulations relating to the proper order of call for induction. The specific requests are set forth in the footnote below.[7]

7. (1) State or submit the list of registrants, by Selective Service number, of all those who were ordered to report for induction at the same time as defendant.
 (2) State whether all persons classified I–A delinquent, I–A, and I–A–O and subject to call prior to defendant were ordered to report for induction prior to issuance to defendant of an order to report for induction and provide documentation of such, including, but not limited to the following documents for each relevant time period of two months before and the month when defendant was ordered to report for induction or for an Armed Forces physical examination:
 a. The compilation of Selective Service System Form No. 102 (Classification Record) for defendant's Local Board;
 b. Every Selective Service System Form No. 115 (Local Board Ac-

tion Summary Sheet) and 115A (Local Board Action Summary Sheet), or a copy thereof, prepared by defendant's Local Board;
 c. Every Selective Service System Form No. 116 (Report of Availability and Summary of Classification), or a copy thereof, prepared by defendant's Local Board;
 d. Every Selective Service System Form No. 201 (Notice of Call on Local Board), or a copy thereof, issued to defendant's Local Board, and every other Selective Service System record recording communications pertaining to the specific call on defendant's Local Board;
 e. Every Selective Service System Form No. 264 (Postponement of Induction) or a copy thereof, issued by defendant's Local Board;

It is well established that failure to follow a lawful quota or order of call is a defense in a criminal prosecution. *See* Yates v. United States, 404 F.2d 462 (1st Cir. 1968); United States v. Weintraub, 429 F.2d 658 (2nd Cir. 1970); Lowe v. United States, 389 F.2d 51 (5th Cir. 1968); United States v. Baker, 416 F.2d 202 (9th Cir. 1968); Little v. United States, 409 F.2d 1343 (10th Cir. 1969). In opposing the defendants' request for discovery of information relating to the order of call, the government argues that the defendant has the burden of placing the order of call in issue and that in any event the inspection of Selective Service Form 102 (Classification Record) is adequate to inform the Selective Service registrant of whether or not the order of call is properly followed in his case.

First, the question of where rests the burden of proof on this issue has led to differing views. *Compare* United States v. Lybrand, 279 F.Supp. 74 (E.D.N.Y.1967), *with* United States v. Sandbank, 403 F.2d 38 (2nd Cir. 1968). The Court of Appeals for the First Circuit suggests that the burden of proof is properly assigned to the government but that it is generally sustained simply on the strength of the presumption of regularity in the process. Yates v. United States, 404 F.2d 462 (1968), on petition for rehearing, 407 F.2d 50 (1969). Regardless of who has the burden of proof, it is obvious that if irregularities in the order of call are a complete

defense to a criminal prosecution, a defendant is entitled to the information in pretrial discovery. See United States v. Condon *supra*. Indeed, imposing either the burden of proof or the burden of proceeding upon a defendant would compel granting access to the records necessary to meet that burden.

The second suggestion, that adequate information is contained in the Classification Record (SSS Form 102), was recently answered by the Second Circuit Court of Appeals in United States v. Weintraub, 429 F.2d 658, 660 n. 1 (2nd Cir. 1970):

"For many reasons this Form 102 is not intended to and does not contain all of the data pertaining to the many thousands of registrants. Nor is this Form used or even referred to in the preparation of the calls for induction, which are uniformly based upon the more reliable files of the individual registrants." [8]

The Form 102 merely lists registrants in the order in which they registered with the Board. 32 C.F.R. § 1621.-6. Under the new lottery system, however, the birth dates of the registrants are scrambled and an entirely new order of call is established. Random sequence numbers are not required to be recorded in the Classification Record. *Compare* Local Board Memorandum No. 99 (Nov. 26, 1969) *with* Local Board Memorandum No. 99 as amended (Nov. 18, 1970). As the *Amicus* points out

---

f. Every Selective Service System Form No. 261 (Delivery List) and 261–A (Delivery List Continuation Sheet), or a copy thereof, issued by the defendant's Local Board;

the requested documents all to be the ones wherein the commanding officer of the induction station has indicated in Column 4 of the document the disposition of each registrant forwarded for induction;

(3) State whether defendant was ordered to report for induction as a delinquent;

(4) State the number of men requested to be inducted by the Department of

Defense from the State of Illinois and from defendant's Local Board for each month during the years 1969 and 1970; and

(5) State the number of men ordered to induction by all Local Boards in the State of Illinois and specifically by the defendant's Local Board for each month during the years 1969 and 1970.

8. *Accord,* United States v. Dobie, 444 F. 2d 417 (4th Cir. 1971); United States v. Lewis, 302 F.Supp. 510 (E.D. Wis. 1969); United States v. Smith, 291 F. Supp. 63 (D. N. H. 1968).

it would be an "arduous and unnecessary task to require defense counsel to look up and reassign the proper random sequence number of each of the thousands of registrants listed in the Classification Record and then to rearrange and list those registrants in order of random·sequence number, which of course is now the order of call." Apparently the Selective Service System in the ordinary course of business does perform this task and has such a record available. If so, it should be made available to defense counsel at the Local Board. If no such document is available, then defense counsel should be permitted access to whatever systems are used· by the Local Board personnel in determining the proper order of call. Because of the possible confidential nature of some of the Selective Service files, any attorney granted access to this information is enjoined from disclosing this information at any time except as may be necessary to assert a proper defense.

 Relative to the *Order and Method of Call,* defense counsel may upon request also inspect at the Local Board or State Headquarters and for each local Board in the State if necessary, the following forms, all of which may be necessary to determine if there has been any pertinent irregularity.

*SSS Form 116.* This "Report of Availability" contains a summary of Local Board registrants and their classification. It is submitted by the Local Board to State Headquarters, and there used by the State Headquarters for its report to National Headquarters.

*SSS Form 117.* This "Report of Availability" contains a summary of Class 1–A and 1–A–O registrants and *random sequence numbers.* This report is also submitted monthly by the Local Board to State Headquarters and is then used by State Headquarters in its report to National Headquarters.

*SSS Form 200.* This form is described as the "Notice of Call on State" and is used by the National Director to notify each State Director of the number of registrants to deliver for induction during a specified period, generally one month.

*SSS Form 201.* This form is described as "Notice of Call on Local Boards" and is used by State Director to notify Local Boards of the number of registrants they are to deliver during a specified period, generally one month. This notice sets the limit on the number of men who may be inducted by a Local Board.

*SSS Forms 261 and 261–A.* Described as "Delivery Lists", these forms are prepared by the Local Boards for completion by the induction center to determine the disposition of registrants ordered to report.

*SSS Form 262.* This monthly report indicates the number of deliveries, inductions and physical examinations within the State.

All of the information just described is to be made available to defense counsel only and shall not be disclosed by counsel except as shall be necessary to assert a proper defense. As so limited the motions of the defendants for information relating to the Order and Method of Call are granted. In all other respects, the motions are denied.

### SUMMARY

This lengthy memorandum and order discusses quite specifically most of the requests presented in the motions of these defendants. I have employed such detail primarily because disposition of the requests in these cases is intended to apply to similar requests in the many cases pending before me wherein counsel have adopted the motions in these cases, as well as to other cases presently pending before me and to those which have already been assigned for trial. A limited number of requests have not been discussed in detail. Such a lack of

discussion was not oversight, but a determination that these requests were plainly without merit. Therefore, to the extent that any defense request has not been specifically granted it is denied.

The parties shall complete discovery promptly. On August 31, 1971 all pending cases shall be assigned for trial in accordance with the rules of this court. Pleas of guilty in these cases may be entered before me until that date.

APPENDIX A

TABLE OF FORMS NORMALLY PROVIDED
TO THE DEFENSE

| Form No. | Title |
|---|---|
| SSS Form 1 | Registration Card |
| SSS Form 2 | Registration Certificate |
| SSS Form 100 | Classification Questionnaire |
| SSS Form 101 | Cover Sheet |
| SSS Form 103 | Graduate or Professional College Student Certificate |
| SSS Form 104 | Request for Undergraduate Student Deferment |
| SSS Form 109 | Student Certificate |
| SSS Form 118 | Dependency Questionnaire |
| SSS Form 119 | Report of Oral Information |
| SSS Form 120 | Individual Appeal Record |
| SSS Form 127 | Current Information Questionnaire |
| SSS Form 150 | Special Form for Conscientious Objectors |
| SSS Form 151 | Application for Volunteer Civilian Work |
| SSS Form 153 | Order to Report for Civilian Work and Statement of Employer |
| SSS Form 171 | Apprentice Deferment Request |
| SSS Form 217 | Advice of Right to Personal Appearance and Appeal |
| SSS Form 219 | Notice to Registrant to Appear for Medical Interview |
| SSS Form 223 | Order to Report for Armed Forces Physical Examination |
| SSS Form 230 | Transfer for Armed Forces Physical Examination or Induction |
| SSS Form 252 | Order to Report for Induction |
| SSS Form 253 | Order of Transferred Man to Report for Induction |
| SSS Form 264 | Postponement of Induction |
| SSS Form 301 | Delinquent Registrant Report |
| SSS Form 304 | Delinquency Notice |
| SSS Form 340 | Appointment of Leader or Assistant Leader |
| DA Form 46 | Record of Emergency Data |
| DD Form 47 | Record of Induction |
| SF 88 | Report of Medical Examination |
| SF 89 | Report of Medical History |
| DD Form 98 | Armed Forces Security Questionnaire |
| 180–R | Acknowledgment of Service Obligation |
| DD Form 398 | Statement of Personal History |
| 809–R | Declaration of Civil Offenses |